E-FILED
Monday, 16 May, 2005  11:04:39 AM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
AT PEORIA

FILED

MAY 1 6 2005

JOHN M. WATERS, Clerk
U.S. DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

SAMMIE SIMPSON,                    )
                                   )
           Petitioner,             )
                                   )
                                   )     Case No.  05-1010
                                   )
     -VS-                          )     Honorable Judge,
                                   )     Joe Billy McDade
                                   )
                                   )
UNITED STATES OF AMERICA,          )
                                   )
           Respondent.             )
                                   )

## REPLY TO GOVERNMENT'S RESPONSE TO PETITIONER'S § 2255 PETITION AND MEMORANDUM IN SUPPORT

Now comes Petitioner, Sammie J. Simpson Jr. in his proper person, and respectfully submit his reply to the Governments Response to Petitioner's petition under 28 U.S.C. § 2255 and Memorandum in support, and asseverate as follows.

**A.    HISTORY OF THE CASE**

1.    History of The District Court Proceeding

Petitioner was indicted and convicted by a jury trial in the District Court for the Central District of Illinois, for conspiracy, in violation of 21 U.S.C. § 846, (R.27,80,81) and on October 18, 2002, the petitioner was sentenced to 262 months imprisonment of the conspiracy on the conspiracy charge (R 108)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
AT PEORIA

SAMMIE SIMPSON,                    )
                                   )
                                   )
              Petitioner,          )
                                   )
                                   )
V.                                 )     Case No.   1:05-cv-1010
                                   )
                                   )
UNITED STATES OF AMERICA,          )
                                   )
              Respondent.          )

## APPENDIX OF PETITIONER

SAMMIE SIMPSON
Petitioner Pro Se

Reg. NO. 20507-424
Greenville Correctional Institution
Post Office Box 5000
Roure 40 and 4th Street
Greenville, Illinois 62246

2.  Appellate Court Review

On july 24, 2003, petitioner's conviction and sentence was affirmed by the Seventh Circuit Court of Appeals. See **United States v. Simpson**, 337 F. 3d. 905(7th Cir. 2003) The following issue were raise and rejected.

a.  The district Judge biased the defendant by taking a overactive role during the trial.

b.  The distrcit Judge erred in disallowing the use of certain impeachment of government witnesses.

c.  The distrci court erred when it dendied a downward departure; and

d.  The district court imposed a sentence that was disparate to co-defendant

Id. 337 F. 3d at 907-09.

3.  Petition Under 28 U.S.C. § 2255

This reply and memorandum is in response to and support of petitioner's petition filed pursuant to 28 U.S.C. § 2255 claining a right to be released upon the grounds that his sentence was imposed in violation of the constitution, and the laws of the Uinted States, and his sentence was in excess of the maximum authorized by law.

**B.  STATEMENT OF FACTS**

Petitioner proceeded to trial to attest his innocense in the charged conspiracy, and although petitioner had a constitutionally required counsel, he did not have effective assistance of counsel at all stages of his defense. Counsel failed to pursue substantial issues and diligently argue the evidnece relating to witnesses testimony as to

drugs charged to the conspiracy and those drugs that was rea-
sonable to petitioner. The record clearly show petitioner was
not a part of the conspiracy at its beginning, And at signifi-
cant times during the conspiracy he was incarcerated and did not
know of or maintain contact many of the of the named co-cospira-
tors counsel failed to employ expert witness to challenge the
government's unproved proffer that the cocaine involve in the
conspiracy was in fact crack cocaine. The trial court's improper
intervention in the examination of the witnesses severely prejudice
the jury by undermining defense counsel's clearly correct procedural
examination of the witnesses in soliciting facts of the case and
to impeach even clearer incredulous testimony.

Their was no actual evidence proving up the conspiracy against
petitioner. None of the witnesses testified to an agreement with
petitioner to posses or distribute drugs and did not meet its burden
beyond a reasonable doubt that petitioner was a member of the con-
spiracy.

Petitioner challenges both the constitutionality of his
conviction and sentence, but the law which he allegedly violated.

## C.  Arguments

28 U.S.C. § 2255 require a prisoner's sentencing court to
release him of the prisoner's sentence was imposed in violation of
the laws of the United States, if the  court was without jurisdiction
to impose the sentence if the sentence exceeded the  maximum authorized
by the law, or if the sentence is otherwise subject to collateral
attack. The statutes provides that if the court finds for the prison-
er, it may resentence him or her act the conviction aside, as is appro-
priate.

## A.   GROUND   ONE

### 1.   Government's Response

The government contents, The district court not  only resolved this dispute , but resolved it in the petitioner's favor.(2) It is unknown to the  goovernment counsel whether the district court appended a copy of the court's determination of this issue to the copy of the presentence report provided to the Bureau of Prisons, as required by Rule 32. See Fed.R.Crim.P.32(i)(3)(C). (3) The presentence report did attribute the drug overdose of William Gilmore to the conspiracy, despite the jury finding to the contrary. Petitioner reject this argument in relevant part.

### 2.   Petitioner's Reply

Petitioner's reply to the government's argument as herein set forth: In order to obtain due process at sentencing, Petitioner raised a number of objections prior to and at sentencing, including that his counsel was ineffective assistance of counsel. First, Petitioner's contents that his rights under the Due Process Clause of the United States Constitution, and Rule 32 of the Federal Rules of Criminal Procedure require that he be sentence on the basis of accurate information, regardless of whether disputed portions of the PSI alter his guideline range of imprisonment.

Second, that Rule 32(1)(C)(3) requires the court to append a written copy of its finding and determination to the PSR, to provide a clear record of the disputed facts for appellate courts and agencies such as the Parol Commission and Bureau of Prisons which may latter rely upon the Presentence Investigation Report.

and accordingly, revission of the PSI is necessary even when
the guidelines sentence will not be altered.

At sentencing the trial court heard arguments from the
Government (Tr.44,45,46,47,*1-25 advancing its position that
Mr. Simpson should be held responsible for Mr. Gilmore's death
for purpose of sentence(Tr.47*1-23). The United States Probation
Officer, echoing the Governments position attempted to persuade
the court absence any evidence, and contrary to the jury finding
(Tr.16*19-25), that an enhance sentence under 2D1.1(a)(2) of the
Sentence Guidelines was the appropriate offense level for whose
conduct Mr. Sammie Simpson's contribution to the drug overdose and
death of Mr. Gilmore.

The court repugn both the Government and United States
probation officer's position and found that neither Mr. Simpson
nor the conspiracy was contribute to the drug overdose of Mr. William
gilmore.(Tr,25,*18-24) PSI-21 paragraph.

Ground I.

The trial court was aware that Mr. Roberson had serious mental problems and suffered from Manic Depression as well as being a life long heroin addict Tr. 45, *4-5. The court acknowledged that days before trial it had Mr. Roberson before the court and ordered he go to a medical facility to be checked out by a doctor and give the proper [psychotropic] medication. Tr. 89, *10-14.

Neither the trial court or the Government attorney made further inquiry into Mr. Roberson's mental condition. Ativalr, is a psychotropic medication that is used in the treatment of schizophrenia and manias associated with bipolar disorder. AstraZeneca Pharmaceuticals LP, See Ativan and site under Seroquel, available at www. Ativan. com March 8, 2009 ).

In his testimony before the jury Mr Roberson testified that in addition to his mental problems he have been a drug user since age 9 Tr. 73, *4-5 using initially cough syrup and marijuana Tr. 72, *11 for purpose of not hearing voices Tr. 73, *14, and he uses drugs to stop hearing voices. Tr. 73, *23-4 The prosecutor then asked how long Mr Roberson had used drug and determine he had using drug 26 years on a daily basis Tr. 73, *4,5

Mr. Robinson was asked were he depressed
from age 9,                    TR. 73,* 11  Mr.
Robinson answered: "Well, I was just hearing
voices then. When I got age 11, that's when
I got abuse and that was - - - when the paranoid
started." TR. 73,* 12-14.  Mr. Robinson was asked whether
he under psychiatric treatment, at 9: TR. 73,* 19
Mr. Robinson recalled how future telling him all
R's best voices . . . that the threaten to kill
his mother and father and burn the house down.

Mr. Robinson voluntarily stated he want to kill
the guy that take him through his problems TR 73,* 4,
When asked was he still depressed. TR. 74,* 11 Mr.
Robinson responded; "I take medication everyday"
Mr. Robinson testified he take Alcool Care for Manic
depression. Mr. Robinson testified to breaking
another inmate jaw because he looked like he
wanted to do something to him  TR. 74,* 10-13.
                      (counsel's)
The Court presented further inquiry into Mr.
Robinson mental state, critical to the believability
of his testimony.  Mr. Robinson's testimony
was essential to the government's case-in-chief.
Mr. Robinson testified that he travelled to from
in Overland with petitioner TR. 39, * 16-20, Mr. Robinson's
testimony was prosecution testimony as to Count 1
and when to establish petitioner's link to the charged
conspiracy with Leonia Simpson TR. 40 * 13-14.

to the said drug practices) Tr. 43, *23-25. Mr. Robinson's testimony would seem incredulous to bizarre and nearly unstable. The court committed plain error by allowing Mr. Robinson testimony, knowing the inherent unreliability of Mr. Robinson. It is an established rule, say, that the question of the credibility of a witness goes to the jury determination unless such testimony is so incredulous as to make a mockery of the judicial process, or so erroneous as to deprive defendant of the fundamental sixth Amendment right to a fair and impartial trial.

with the prosecutor

Mr. Robinson responses to defendant several questions were too often confusing and inconsistent at crucial times during the cross Defense this.② Mr. ask whether Mr. Robinson sought medication for his depression once released from the Dept. of Corrections. Mr. Robinson responded: "Well, it was in my constitution to go to a hospital." Defense counsel attempt to established Mr. Robinson's mental stability at the times he testified to events concerning petitioner involvement in the conspiracy was critical to Mr. Robinson's reliability and credibility. Tr. 89, *31-25

(2) ———

After the answer had been given, defense counsel, objected to the question as leading, and the trial court overruled his objection in order to solicit an intelligible direct replain.

AMONG

Mr Robinsons testimony establish the foundation
for the introduction of all manner of incendiaries
testimony concurning petitioner and McGinnis TR.49, *16-20
also known as (Doc) TR. 49, *25, McGinnis's link to
Count I and count II of the government case was
necessary to the testimony of Heath Neal, Burt
Manus, and Jarison, without Mr Robinson's testimony
links not viable link in the government chain of
evidence of drug sale among the conspirator could
be reasonably established. Without Mr Robinson's
testimony petitioner could not have been link the
the on-going drug conspiracy of Severes Simpson
in Peoria already under Investigation long before
petitioner was known to authorities.

Start.
The record confirm that the petitioner was incarcerated
in Cook County Jail during the ferit to enderg
months of the alleged conspiracy, Mr Robinson
was the linch pin of the governments case against
petitation Sammie Simpson, The Court errored in
allowing Mr Robinson's mental condition to be shelded
from the jury, the court arror was plain when it
limitted defenses counsel limited inquiry into
Mr. Robinsons mental condition to contract his
credibility, reliability and competency against his
life long documented history of mental illness
and drug abuse and there by deprived petition
of his surld amendment guarantes of a fair and
impartial thoil

(A)
The Court erred in allowing
Mr. Robinson to testify having been
appraised of him mental health and
questionably compatance, would be
extremely prejudicial where his testimony
would be contradictive of the facts a
deprive defendant of a fair and impartial
trial, had Mr Robinsons testimony not
been allow, the defendant could not have
found guilty of conspiracy.

(B)

The court determine Petitioner was a leader organizer in the offense essentially because he was charged in a conspiracy. The court did not determine petitioner was a leader organizer of a criminal activity involving five or more participants prior to imposing sentence pursuant to U.S.S.G. § 3B1.1(a). To assess the enhancement, the court must find that the petitioner organied a criminal activity involving five or more participants other than himself. United States v. Andreas, 216 F. 3d 645, 680 (7th Cir. 2000).

Although the guidelines do not define the "term" organizer or leader, "several factors should be considered when determining a defendant's supervisary role. United States v. Sheikh, 367 F. 3d 683,689 (7th Cir. 2004) These factors include: (1). the exercise of decision making authority: (2). the nature of participation in the commission of the offense; (3). the recruitment of accomplices; (4). the claimed right to a leader share of the fruits of the crime; (5). the degree of participation in planning of organizing offense; (6). the nature and scope of the illegal activity; and (7). the degree of control and aurthority exercised over other. U.S.S.G. § 3B1.1, App. note of.

This court has repeated held that an important element, of the court, anaylisis should be whether the defendant exercised control over at least four other participants See. United States v. Vargas, 116 F. 3d 195,198 (7th Cir. 1994)

United States v. Mustread 42 F. 3d 1097,1104, (7th Cir.1994).
(To qualify as an leader organizer under 3B1.1(a) the defendant
must have some control, direct or indirect, over at least four
other participants in the offense") United States v. Zaragoza,
123 F. 3d. 472,483 (7th Cir 1997); United States v. Guyton,
36 F. 3d. 655,667 (7th Cir. 1994); In the present case, the
court did not consider the issue of control. Furthermore, there
is no evidence in the record that Mr. Simpson exercise any type
of control over any other participants in the offense.

     Control in the context of this enhancement means"some kind
of supervisory or organizational role with respect to those
participants, including recruitment of other participants United
States v. Ramoga 177 F. 3d 617,621 (7th Cir. 1999).(Leaders
ordinarily exercise control over subbordinates in a hierarchy,
on the other hand, do not necessarily control anyone but none
the less influence the criminal activity by coordinating its
member.) United States v. Reneslacis, 349 F. 3d 412,417, (7th
Cir. 2003)

*INEFFECTIVE Argument*

## 1.    **PETITIONER WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL**

Claims of ineffective assistance raise a cognizable
constitutional issue that can ~~servr~~ *serve* as basis of a motion
under § 2255. **United States v. Boyles,** 57. F. 3d 1426
(7th Cir. 1995)

The Sixth Amendment to the United States Constitution provides
that in criminal prosecution the accused shall have the right
to the assistance of counsel for his or her defense. The Supreme
Court has held that this right includes the right to effective
assistance of counsel.

**McMann v. Richardson,** 397 U.S. 759, 771 n. 14 90 S.Ct. 1441,25
L.Ed.2d 763(1970) Pursuant to this constitutional mandate, a
defendant is entitled to reasonably competent assistance of counsel
from pre-plea investigation and preparation through advacacy at
sentencing.

**United States v. Garcia,** 698 F. 2d. 31   33-34 (1st Cir. 1983)

The United States Supreme Court has held that in order for
a petitioner to show that counsel's assistance was so ineffective
at the sentencing stage to warrant vacating or correcting a sentence
under 28 U.S.C. § 2255, the petitioner must show:

(1). That his counsel's acts or omission made counsel 's overall
performance fall below an objective standard of reasonableness and

(2). That there is a reasonable possibility that, counsel's deficient
performance prejudiced the defendant, resulting in an unreliable or
fundalmentally unfair outcome of the proceeding.

[illegible] ..., or correct sentence, court should [illegible] sentence imposed in violation of relevant statute, even if correction would not shorten defendant's stay in prison. Haywood v U.S, 216 F. Supp. 2d 725 (7th Cir. 2002)

Rule 32

Counsel strongly objected to the increased offense level based on the death of Mr. Gilmore. Tr. 17, *5-10 and *12-4. The court made note of the defense objection without questioning or resolving the controverted matter. **Krammer v. U.S.** 798 F. 2d 192,197 (7th Cir. 1986), More importantly, it violated the essence of the judge's role in the adversarial process; to question assertions and to reflect before relying Id. at 194.

Failure to follow Rule 32 by failing to either resolve disputed or to state that they would not be relied upon in sentencing, require vacation of the sentence. **United States v.Reynolds**, 801 F. 2d 952,958 (7th Cir. 1986) see also **United States v.Villasenors**, 977 F. 2d 331,339 (7th Cir 1992) (although re-sentencing may be unnecessary for a ministerial violation of Rule 32, remand for further proceedings may be required to clarify the record so that provides a complete and accurate record of the information upon which the sentencing court relied.) Further even failing to append those finding to the ("PSI") itself will usually require remedial action by the court **United States v. Musa**, 946 F. 2d 1297, 1308 (7th Cir. 1991).

B. Analysis of Blakely v. Washington and United States v. Boooker to the Sentencing Guidelines as enunciate Herein

On June 24, 2004. the United States Supreme Court issued an opinion in **Blakely v. Washington**, a case contesting the application of the Washington State Sentencing Scheme. **Blakely v. Washington**, ________ **U.S.** ________,124 S. Ct. 2531 (2004).

at the time of his arrest to determine if the chemical composition
meets the Sentencing Guidelines definition of crack cocaine for
the purpose of the enhance penalties.

Petitioner and co-defendants petitioned the court by
letters written October 9, 2002 and in October 10, 2002. received
and docketed by Honorable Judge McDade, Dkt. No. 95- 10-10-02
Tr. 4,*19-22, Tr.6*15-16, appraising the  court that counsels
presentation was deficient.

Drug type and quantity was centrally at issue in
petitioner's letters. Petitioner may not have skillfully articulated
specific objections to all the ineffective assistances claim relevant
to the drug type and quantities, he nevertheless, made specific
notation in his letters of his objection to the drug type and quantity
attributable to him.

3.  Argument

Subsequent to trial, petitioner requested counsel to object
to and challenge the crack cocaine charged in the indictment, but
counsel failed to raise a viable motion to suppress, object to
obvious prejudicial referense to crack cocaine verses cocaine
hydrocholride. (power cocaine). Counsel was fully aware that failure
to object would presedurally bar subsequent challenges on direct
appeal.

Criminal defendants are guaranted a constitutional right
to effective representation of counsel. To be entitled to relief
based on ineffective assistance of counsel, a defendant must show
both (1)  that his counsel's performance was below an objective
standard of reasonableness, and (2)  that a "reasonable probability"
exists that, without these unprofessional error, "the results

- 2 -

Ineffective Assist

**Strickland v. Washinton,** 466 U.S. 668, 104 S. Ct. 2052, 2064

80 L. Ed. 2d. 674(1989); See also **Glover v. United States,** 531

U.S. 198,204(2001). Under the first prong of the above test, the

petitioner must show in light of all the circumstances present

at the time of sentencing, counsel's acts or omissions " were

outside the wide range of professionally competent **Tejeda v.**

**Dubois,** 142 F. 3d 18,22(1St Cir. 1998) Under the second prong,

the petitioner must show a reasonabl probability that," armed

with the correct information, the outcome would have been diff-

erant." **United States v. Voncol,** 916 F. Supp. 372,377(D. Del.

1996).* In the present case, the Petitioner's counsel rendered

ineffective assistance at Petitioner's sentencing on the 841(a)

(1) charged because he failed to demand defendant be sentence

based on the drugs in the conspiracy that were reasonable fore-

seeable to him,

Petitioner filed this action with the aide of the inmate law library clerk assisting him with the use of legal research reference material. Petitioner is a lay person unable to articulate his claims sufficiently to state the percise claim. Petitioner sufficiently to states the percise claim. Petitioner should not be held to the standard of an Attorney at law and the court should construe his claim liberally and with tolerance. In **Haines v. Kerner**, 404 U.S. 519, 30 L. Ed 2d 652,92 S. Ct. 594 the Supreme Court Opined, (holds allegations of a pro se complaint to less stringent standard than formal pleading drafted by lawyers) the court should allow petitioner to state a more concise claims throughout this reply. To deny petitioner refurbish claim would deny him access to the court by holding petitioner to a standard of a licensed attorney.

Counsel was ineffective for failing to argue the role in the offense enhancement. This is not a new claim. Petitioner's pro se letters received by the court on or about 9/23/02 urged the court to take juricial notice of counsels deficient performance Docket at 93  09/24/02 .

Petitioner repeatedly asked counsel to address the issue of leadership role attributed to him in the Presentence Investigation Report, but counsel's failed to argue the petitioner's position as to the propose enhance, violated petitioner due process protection **Strickland v. Washington**, 466 U.S. 668, 80 L.  d 2d 674, 104 S. Ct. 2052 (1984) See **Lockhart v. Fretwell**, 506 U.S. 364 122, L. Ed 2d 113 S. Ct. 838 (1995).

**E.    Ground Five**

1.      Government Response

The petitioner claims that the indictment did not charge
and the jury did not find a threshold drug quantity in violation
of Blakely v. Washington. (2) A review of the indictment shows
that it alleged that the conspiracy "involved more than one kilo
of heroin" and "involved more than 50 grams of cocaine base(crack)"
(R.27,p.3) The petitioner's assertion concerning the indictment is
incorrect. (3) Likewise, a review of the verdict forms shows that
the jury did determine the quantities of cocaine base (crack) and
heroin beyond a reasonable doubt. (4) The jury verdict found that
the conspiracy involved" 1 Kilogram or more of heroin" and 50 grams
or more of cocaine base(crack)". (R.81) The petitioner's assertion
concerning the jury verdict is incorrect. (5) The petitioner's
argument that his sentence violates Blakely is meritless. Blakely
does not have retroactive application to § 2255 motions. Simpson
v. United States, 376 F. 3d 697 (7th Cir. 2004).

2.      Petitioner Reply

The indictment is defective on its face for failure to
charge a drug quantity sufficient to give notice of the nature
and cause of charge against defendant.

**Argument**

Petitioner filed this action with the aide of inmate law
library clerk assisting him with the use of legal research
reference material. Petitioner is a lay person unable to articulate
his claims sufficiently to state the precise claim.

Petitioner should not be held to the standard of an attorney at law and the court should construe his claim liberally and with tolerance. In **Haines v. Kerner,** 404 U.S. 519, 30 L.Ed 2d 652,92 S. Ct.594 The Supreme Court opined, (hold allegations if a pro se complaint to less stringent standard than formal pleading drafted by lawyers) the court should allow petitioner to state a more concise claims throughout this reply.

To deny petitioner refurbish claim would deny him access to the court by holding petitioner to a standard of a licensed attorney.

The indictment in its three counts fails to set forth properly and with the requisite definiteness and particularity all the essential elements of the crimes attempted to be charged a drug type or quantity alleged to have been distributed

That drug types and quantity are necessary and essential element of the charged offense: however, there is no drug type or quantity in Count I or Count II of the indictment, but merely a blanket charge of a general and vague citition of the statutes. The failure to specify the type and quantity amount to violation of the Defendant's right to due process of the law as guaranteed by the Fifth Amendment to the United states constitution which provides that the accused shall have the right to be informed of the nature of the accusation made against him.

The Fifth Amendment and Sixth Amendment of the United States Constitution Guarantee's in Relevant parts:

> No person shall be held to answer for a capital,
> or otherwise infamous crime, unless on presentment
> or indictment of a Grand Jury. . . . Art v. U.S.C.
> and to be informed of the nature and cause of the
> accusation. Act II. U.S.C.

These pronouncements are the foundation upon which Rule 7
(c)(1), of the Fed. A. Criminal P. demand in all criminal prose-
cution, the accused must be informed of the nature and cause of
the accusations against him. The defendant was charged in an
Superceding Indictment with conspiracy, to distribute heroin, a
Schedule I controlled substance, and distribution of cocaine base
(crack) in violation of 21 U.S.C. §846 and 841(b)(1)(A).

The overt acts are surplusage, and are neither essential to
nor constitues elements of the offense or statute under which
defendant was charged. Count one of the indictment does not serve
to inform the defendant of the nature of all essential elements
constitutional required  by law.

Moreover, overt acts cannot substitute the requisite language
neeessary to be charged in each count of the indictment. That since
the indictment is substantual defected that it cannot support the
conviction of defendant.

Counsel's performance fell below an objective standard of
reasonableness for failure to challenge the deficiency of the
indictment upon which defendant was convicted.

That counsel failure to move to dismiss the indictment and
to allow defendant to proceed to trial know the indictment was
defected violated defendant's rights under Fifth and Sixth Amendment
to the United States Constitution.

The indictment failed to put petitioner o*ᵖ* adequte notice of the drug type and quantity for which he was charged. No amount of drugs was charged in charging body of the indictment and petitioner was not able to adequately prepare to defend against mere citation of the statutes. The defective indictment deprived petitioner of substantial right to be informed *of* the nature and cause of the accusations against him which prevented petitioner from, seeking expert examination and determination whether the substance was, in fact, cocaine base for which the indictment gave no notice of prior to his conviction.

The deprivation of petitioner's Sixth Amendment rights as announceed in **Apprendi** and **Jones**. *c*clearly establishes error, of such and kind that deprives petitioner of any fundamental part of the jury trial guarantee is plain. Because the indictment failed to charge a drug quantity; petitioner was unable to defend against the indictment is insufficient because it fails to state a material element of the offense **United States v. Locklear,** 97 F. 3d 196, 198-99(7th Cir. 1996) The Sixth Amendment guarantee of notice sufficient to prepare a defense and invoke the double jeo*ᵖ*ardy clause when appropriate in a fundamental protection without compromise.

In the case at bar, there was no 'quantity' listed in the indictment that could actual *ly specify what* amount of imprisonment the defendant would be exposed to. The petitioner was not put on "proper notice" as the Supreme Court in Neder directed. As such, the petitioner was deprived his Fifth Amendment Rights to Due Process and his rights to Notice and Jury Trial Guarantees under the Sixth Amendment as a result of this omission. Accordingly, the indictment is defective and must be vacated.

Petitioner refers this Court to the Fifth Circuit holding that the failure of the indictment to charge each and every essential element of an offense is a serious constitutional violation. **United States v. Cabrera-Terran,** 168 F. 3d 141,143 (5th Cir. 1999). Further, in **United States v. Morales-Rosales,** 838 F. 2d 1359, 1361-62 (5th Cir. 1988). holding that "the failure of an information (Indictment) to charge an offense is a jurisdictional defect that is not waived by a guilty plea".

The instant case was the result of a guilty plea, and the Grand Jury Indictment is 'defective' as a result thereof. Moreover, since the Grand Jury Indictment failed to place the defendant on 'proper notice' the trial court was deprived of its jurisdiction to impose the sentence herein, and accept the guilty plea.

In **Apprendi v. New Jersey,** 120 S. Ct. 2348 (2000), the Supreme Court expressed a heightened concern that the determination of 'sentencing factors' by a judge using a preponderance of the evidence standard implicates the accused Due Process Rights under the Fifth Amendment and the Right to proper Notice and Jury trial guarantees under the Sixth Amendment. See **United States v. Norby,** slip opinion No. 9910191(9th Cir. 2000)

Petitioner objects to the enhancements listed in the Presentence Investigation Report(PSR) Petitioner takes the position that the punishments set forth in Section 841(b)(1)(A) are not available in this case because Section 841(b)(1)(A) describe a separate offense, one element of which is an aggravating drug quantity. Because the aggravating drug quantity was not alleged in the indictment in this case,

petitioner is not guilty of, and cannot be punished for the offense described in Section 841(b)(1)(A). The maximum sentence the court could have imposed in this case, on basis of the jury verdict of 50 grams or more of cocaine base and 1 Kilogram o more of heroin had he made no finding concerning quanit of drugs or leader organizer would have been 120 months, given the petitioner's base offense level when the petitioner possessed at least 50 grams but less than 150 grams of crack, and the petitioner's criminal history catagory II. U.S.S.G. Sec. 4A1.1(a), 2(c)1. Without any enhancements as indicted above, the level 32 is also applicable of petitioner possess atleast 1 Kilogram but less than 3 Kilograms of heroin. In the absence of an allegation of an aggravating drug quanity, petitioner is guilty of, and can only be punished for the lowest grade of controlled substance (Schedule II narcotic) trafficking offense as fou d under Section 841 (b)(1)(D), a maximum term of five years.


Petitioner was neither charged with nor possessed any amount of heroin or cocaine base at the time of his arrest. The indictment charged petitioner with the offense under 21 U.S.C. §846 and 841 (b)(1 (A). Under the sentencing guidelines scheme the amount and type of controlled substance determines the sentence to be imposed according to the statutory provisions, and under the sentencing guidelines. Under § 841(a) a person charged with possession or distribution of 50 grams or less of marijuana, or any substance using the Marijauana Equivolent Table §2D1.1 must be sentence under 841(b)(1)(D), which proscribes a sentence of no more than five years.

Under the Sentencing Guidelines § 2D1.1(c) in effect at the
time of sentencing, petitioner's guideline range would have been the
lowest level in "Zone D" of the guideline table to level 12, with
a criminal history catagory of II. and the petitioner's sentence
would be 12-18 months. Given only if the petitioner had been held
responsi̇ble for the drugs charge in the original indictment would his
sentencing guideline range      still be level 32 and the criminal
history catagory II, for a sentence of 46-57 months.

At sentencing the Government argue that $\overset{the \ petitioner}{}$      should be held
responsible for the death of William Gilmore for the purpose of
sentencing, and petitioner should be sentence under § 841(b)(1)(A),
which provides a mandartory minimum sentence of 20 year to life
if the offense of conviction establishes that death or serious
bodily injury resulted from the use of the substance. The Court
rejected the Government's position and did not attribute the death
of Mr. Gilmore to petitioner at sentencing for purpose of the enhanced
sentence.

The Government and the Probation Officer mislead the Court
by asserting that the mandatory minimum sentence was 20 years
regardless of the enhancement for the death, and that the sentence
range remained at level 38.

This was completely false. The level 38 could have only been
imposed if the court would have found petitioner responsible for
the death of Mr. Gilmore. The Sentencing Guidelines § 2D1.1(c)
prescribes level 32 for the precise drug amounts found by the
jury verdict and the sentencing range is 135-168 months, criminal
history catagory II.

As the petitioner argues, the indictment charges no drug amount and is therefore defective and can not support a conviction or the sentence guidelines calculation outline herein. Moreover had the court not been "real victim" of the Government's ruse the correct sentence would have been  imposed

It is clear from the foregoing superarogated facts that had it not been for counsel defiency performance objections to the government's malicous canard would have prompted the  court to impose the correct sentence.

## Conclusion

As demonstrated above, The petitioner's due process right under the 5th Amendment were violated when he became subjected to a trial by jury based on a Fedral indictment which failed to list a drug quantity amount which would have placed petitioner on notice of all essential elements of the indictment.

With that in mind, the petitioner would also move the Court to further consider the fact that his Sixth Amendment Rights were violated when the district court failed to provide the petitioner with a fair and adequate trial by jury and effective assistance of c counsel when defense counsel failed to move for dismissal of the indictment during the Pre-Trial Stages of the case under Rule 6 and 7 et.seq.

Cause is shown by both Constitutional Violations and Counsel's failure to move for dismissal prior to trial.

Prejudice is demonstrated by the amount of actual time petitioner received at his sentencing hearing. (262-327 months) See **Glover v. U.S.** 531 U.S. 198 (2001).

Sammie Simpson #20507-424

**GOVERNMENT'S Response:**    **Ground Six:** The petitioner claims that the district court erred when it enhance petitioner's sentence for his role in the offense. In this argument. the petitioner quarrels with the district court's determination that he was an organizer or leader of the conspiracy. The petitioner is once again trying to raise an issue which is not cognizable in a § 2255 motion. Collateral attacks on the implementation of the Unitd States sentencing Guidelines are not generally permitted. Scott, 997 F. 2d at 341-43; 153 F. 3d at 443 . . .

**Petitioner Reply:** First of all, the petitioner has continued to claim ineffective assistance or counsel on behalf of his defense counsel throughout just about every stage of the proceeding. See **(Exhibit A).**

AS will be shown, despite the petitioner's repeated attemps to convince his defense counsel to object and demonstrate through various excerpts from the trial transcript's exactly what each with witness stated under oath, he would not listen to the petitioner. See **Docket** at 93, 09/23/02.

The petitioner Sammie simpson, did not influence any members of the alleged conspiracy. The government never proved that the petitioner was a leader or organizer of any one involved.

Furthermore, there is no evidence that the petitioner acted as a leader or organizer of anyone involved.

Every witness that took the stand to testify stated they purchased drugs from who ever they could. The government facts do not support a showing that the petitioner had control over **Levence Simpson, Jerry McGinnis, Haywood Robinson, Burke Meanus, Nikki Witby, Eddie Jackson, Heather Wise, Daniel Parker, R. Grayson, Ella Donaldson,A/K/A (Reese).**

The record show that brent brown testified that later in
he was basically dealing drugs. (T. 187-90)  Levence Simpson in
the cocaine business in 1997. He also stated once he got Levence
started, and that Levence was doing his own thing. (T. 190-193).

Mr. Brown further testified that Westside (the petitioner)
would bring cocaine to Peoria, but it died down because it was not
selling as well as heroin. (T. 193-197). Mr. Brown claims he saw
Jerry McGinnis (Doc) selling cocaine at various places, including
the  Budget Motel. Mr. Brown also saw Doc sell to Heather Wise.
(T. 205-208).

Mr. Brown, then admitted he was a member of the Ganster Disciples
street gang and sold drugs with them. Mr. Brown testified he supplied
cocaine to Levence Simpson to set him up selling. (T. 209-216).

The record as shown above should reflect that the petitioner
did not exercise any control over Brent Brown, or Levence Simpson.

Moreover, the record as presented, further demonstrate that
the government can not link Sammie Simpson, phone records to Levence,
Brent Brown, Burke Meanus, Eddie Jackson, Heather Wise, Nikki Withby,
Daniel Parker. (the petitioner). (T. 289-90).

Mr. Jackson traveled to Chicago, Illinois on his own and did
not purchase drugs from the petitioner Sammie simpson.

The petitioner Sammie simpson, did not exercise control over
Mr. Jackson. The testimony at trial show that other individuals in
the conspiracy were involved in transporting and selling herion and
cocaine independent of petitioner in Peoria Illionis, Haywood
Robinson testified he sold drugs to Tony on the North side of
Chicago, (T. 39). and he took Levence Simpson to the North side
to purchase heroin from Tony. (T. 47)

Petitioner filed this action with the aide of the inmate
law library clerk assisting him with the use of legal research
reference material. Petitioner is a lay person unable to articulate
his claims sufficiently to state the percise claim. Petitioner
sufficiently to states the percise claim. Petitioner should not
be held to the standard of an Attorney at law and  the court should
construe his claim liberally and with tolerance. In **Haines v. Kerner**,
404 U.S. 519, 30 L. Ed 2d 652,92 S. Ct. 594 the Supreme Court
Opined, (holds allegations of a pro se complaint to less stringent
standard than formal pleading drafted by lawyers) the court should
allow petitioner to state a more concise claims throughout this
reply. To deny petitioner refurbish claim would deny him access
to the court by holding petitioner to a standard of a licensed
attorney.

Counsel was ineffective for failing to argue the role in the
offense enhancement. This is not a new claim. Petitioner's pro se
letters received by the court on or about 9/23/02 urged the court
to take juricial notice of counsels deficient performance Docket
at 93  09/24/02 .

Petitioner repeatedly asked counsel to address the issue of
leadership role attributed to him in the Presentence Investigation
Report, but counsel's failed to argue the petitioner's position as
to the propose enhance, violated petitioner due process protection
**Strickland v. Washington**, 466 U.S. 668, 80 L.  d 2d 674, 104 S. Ct.
2052 (1984) See **Lockhart v. Fretwell**, 506 U.S. 364 122, L. Ed 2d
113 S. Ct. 838 (1995).

Counsel was ineffective for failing to argue the role in
the offense enhancement for being a leader, organizer, resulting
in a 2 level increase in the petitioner Sammie Simpson offense
level. Where there was no evidence to support the enhenced sentence
which severely prejudice petitioner See **United States v. Andreas,**
216 F. 2d 645 680 (7th Cir. 2000) held that to access the enhancement,
the court must find that petitioner organized a criminal activity
involving five or more oarticipants other than himself). The lack
of evidence and testimony at trial can not support the 2 level enhance-
ment, and counsel performance fell below an objective standard of
reasonableness for failure to argue the 2 level enhancement increase
in the sentence. Although petitioner offense level was level 36, and
his  sentence was 262 months, absent the 2 level enhancement, had
counsel objected, petitioner's resulting offense level would have
been level 34, and the sentencing range would have been 168-210 months.
Had the court  sentence petitioner to the top of the guideline range
absent the role in offense, the resulting sentence would be 210 months,
52 months longer than the sentence the court had to impose in light
of the mandatory sentencing structure in place at the time of
sentencing. Had the court sentence petitioner to the low end of the
guidelines range, which the court did, the resulting sentence would
have been 168 months, more than 94 months longer, Counsel's failure
to argue the increase penalty violated his Sixth Amendment right to
effective assistance of counsel and his due process right to be
sentence on the basis of reliable and accurate information.

Counsel's deficient performance violated petitioner's fifth Amendment right to due process and Sixth Amendment right to effective assistance of counsel. and had it not been for counsel's deficient performance the outcome at sentencing would have been different. Therefore, in light of the foregoing factual claim this court should vacate, and set aside the sentence and remand for resentencing.

**G.    GROUND  Seven**

1.   Government's Response

The Government's response to petitioner's claims is does
not adequately and concisely address the issue raised. The Government
response as follows:

(1)   The petitioner claims that his attorney was ineffective
for failing to object to drug quantities that were not found by the
Jury.   (2)   His true claim is that the jury did not find drug
amounts beyound a reasonable doubt. (3)   A closer inspection  of
the verdict forms show that the jury did determine the quantities
of cocaine base (crack) and heroin beyond a reasonable doubt.
(4)   The petitioner's claim that the jury did not make such finding
is simply false. (5)   His claim that his counsel did not object is
also false. (6)   A review of the presentence report shows that the
petitioner's attorney did object to the calculation of drug quantities
in the report.  (R.99). (7)   The district court heard and considered
the objections to¶¶36 and 41 of the presentence report. (8)   The
district court resolved those objections to the drug weight, finding
a base offense level of 36 (R.99).   (9)   The objection by his
counsel was denied.

2.   Petitioner's Reply

Many if not all of the Government responses to petitioner's
petition are not accurate interpretations of petitioner's claims;
therefore, in order for the Court and the Government to have a clear
understanding of petitioner's claims the follow supererogation of
the petitioner's claims is as follows:

### 3.    Summary of the Issues and Points of Authority

Petitioner contents counsel's performance fell below an objective standard of reasonableness for failing toobject to and challenge the enhance penalty for (crack), as well as object to that the government failed to meet its burden or proving that the substance distributed was the "Crack" for of cocaine base described in 2D1.1(c)(D) of the Sentencing Guidelines.

Counsel was ineffective for failing to argue that the correct identiy of the form of cocaine base is critical to the sentencing determination. The Sentencing Guidelines prescribe a sentence for cocaine and cocaine base squarely within the guideline range for the quantity of substance possessed or distributed; whereby, the form of cocaine base describe as "crack" under the Sentencing Guideline prescribe a mandatory 100:1 ratio for aggregated drug amount in the offense. As a results, counsel's failure to object to the Government's failure meet its burden of proving that the form of cocaine base attributed to petitioner is the form described under 2D1.1(c)(D) of the Sentencing Guidelines exposed petitioner's to an enhanced sentence far greater that prescribe for cocaine.

### 4.    Argument

Counsel failure to argue that the Government did not prove that the cocaine attributed to petitioner was the correct form of cocaine base (crack) described in 2D1.1(c)(D) of the Sentencing Guidelines for purpose of enhance sentence.

Petitioner was sentenced to 262 months imprisonment do to counsel failure to challenged the attribution of crack cocaine to petitioner without a clear and decisive analysis of the substance charged to determine if the petitioner quanlify for the enhance penalty.

The substantial increase in the petitioner's sentence directly resulted from the 100/1 for crack cocaine not objected to by counsel and was severely prejudicial. **United States v. Granados,** 168 F. 3d 343, 346, (8th Cir. 1999).

Under the circumstance counsel's error was so serious that petitioner was deprived of a fair trial.See **Ashford v.** Gi **Gilmore,** 167 F. 3d 1130, 1134 (7th Cir 1999).

As, a result, petitioner sentence should be vacated and remanded for hearing consistance with the holding in the **United States v. Edwards,** No. 05-4234 (7th Cir. court of appeals 2005).

U. 1 v Edwards, No. 03-4234 (7th Cir. Feb. 11, 2005)

The case presents the question of whether this distinction is meaningful for purposes of the enhanced penalties for cocaine base offenses under 21 U.S.C. § 841(b).

The question in this case is whether the mandatory minimum sentence in the statute applies, like the Guidelines, to crack offenses only.

In U.S. v. Booker, 70 F.3d 488, 494 (7th Cir. 1995) we held that because "Congress and the Sentence Commission intended 'cocaine base' to mean crack cocaine, the enhanced penalties in §841(b) and the Guidelines apply to crack cocaine, and the lesser penalties apply to all other forms of cocaine

The court reiterated the holding in Booker in U.S. v.Meddrick, 90 F.3d 1276, 1282 (7th Cir.1996), and referred to it in three subsequent cases applying the amended guideline definition which limits the applicability of the higher Guideline penalties to offenses involving only the subset of cocaine base that constitutes crack

U.S.v Earnest, 129 F.3d 906, 915-16 (7th Cir 1997)
U.S. v. Adams, 133 F.3d 586, 591-92 (7th Cir. 1997)
U.S. v. Hall, 109 F.3d 1327, 1336 (7th Cir 1997)

U.S. v. Booker 70 F.3d 488 (7th Cir. 1995), not to be
confused with a more recent case from the
(7th Circuit) pursuit by the same name, U.S. v. Booker
375 F.3d 508 (7th Cir. 2004) just affirmed by the Supreme
Court, U.S. v. Booker 543 U.S.____, 2005 WL50108 (Jan. 12, 2005),
which applied the rule of Blakely v. Washington,
124 S. Ct. 2531 (2004), and Apprende v. New Jersey
530 U.S. 466 (2000).


In looking elsewhere for guidance, the court
adopted the reasoning of U.S. v. Barbosa, 271
F.3d 438, 467 (3d. Cir. 2001)


Note:
      the government in U.S. Brubane, 367 F.3d 910, 913-14 (D.C. Cir. 2004)
did not prove the substance was inhalable, and it did
prove that it was crack."

**A.    Ground Nine**

### 1.    Government's Response

The Government asserts the following: (1) The petitioner
claims that the trial testimony of Haywood Robinson was not
credible and the district court erred by allowing him to testify.
In this claim, the petitioner does little more than quarrel with
the weight given to the trial testimony of Robinson. (2) Although
far from glamorous, the testimony of Robinson painted an accurate
picture of many years of drug abuse and addiction. (3) As a member
of the conspiracy, Robinson's testimony was important. (4) When
he described the baggage that he carried from his involvement
with drugs, Robinson was discrediting his own story. (5) The
petitioner was not prejudiced by the fact that Robinson discredited
his own testimony.

The claim is another example of a non-constitutional issue
that was not raised and therefore, waived, on direct appeal. The
petitioner cannot raise it in his § 2255 motion.

### 2.    Petitioner Reply

The trial court error when allowing Mr. Robinson to testify
knowing Mr. Robinson questionable mental health and manic depression
ailments raised substantial question of competency and undermind
the integrity severely prejudice the defendant.

A summary of Robinson's testimony in relevant citation
to the record is as follows:

Mr. Robinson testified, in addition to his mental health problems, that he was a co-defendant of the three who went to trial. He further testified to his extensive prison background.

The record show Robinson testified being the leader of the allege conspiracy. (t.36-43) Robinson indicated he have used heroin every day since age 15 and since age 9. (Tr.72$^{*}$16-17 and marijuana and cough syrup. (Tr.72,$^{*}$11) to quest the voices(Tr. 72,$^{*}$14 telling him to "Kill,Kill,Kill," and not be depressed. He testified he had been abused when he was young and was hearing voices. He stated that he wanted to kill people. He said that he became paranoid at the age 11. He stated that he hates faggots, and people, and he hates himself and takes medication for depression everyday. He testified that he takes "manic depression and atidal to slow down from hearing voices.

The prosecutor asked how long Mr. Robinson had he used drugs 26 years on a daily basis Tr.72,$^{*}$4, Tr.73,$^{*}$11 Robinson answered, "Well, I was just hearing voices then. When I got age 11, that's when I got abuse and that was when the paranoid started. Tr.73,$^{*}$12,14.

Mr. Robinson responses to both the prosecutor and defense counsel question were confusing and consistently inept, to the extent that the court had to allow leading question by the government, over countless objections by the defense, simply to maintain a measure of competently cognizance continuity to Robinson incredulous testimony.

Mr. Robinson was the linchpin of the Government's case-in-chief, his testimony establish the foundation for the introduction of testimony linking petitioner and McGinnis Tr.49,*16-20, known as (Doc.) Tr.49.*25 to Count I and Count II of the Government's case, Without Mr. Robinson's testimony the government chain of evidence would have crumble. And the government could not have link petitioner to the on-going drug conspiracy in Peoria already under investigation before petitioner was known to any authorities.

On cross-examination, the Court prevented defense counsels further inquiry into Mr. Robinson's mental states, this restraint critically impaired the defense's ability to establish the credibility and believability of Mr. Robinson's testimony to the jury. The impact of the Court's determent was overwhelmingly prejudicial, since Mr. Robinson's testimony was the cornerstone of the conspiracy charged in Count I. of the indictment, and went to establish petitioner's link to the Peoria conspiracy with Levence Simpson Tr.40,*13-14. Clearly, throughout the examinations of Mr. Robinson, his testimony moved from incredulous to bazar, and at all times clearly unstable.

Neither the Court nor the Government informed the defense of Robinson's condition or that Robinson had been prescribed Atival, a psychotropic medication that is used in the treatment of schizophrenia and manic associated with bipolar disorder, AstraZeneca Pharmaceuticals LP, See Atival web site under Seraquel, available at WWW.Atival.com., neither the Court or the Government appraised the defense what affect the medication would have on

The court error in restricting defense inquiry into the credibility of a material witness essential to the jury determination.

### Argument.

The trial court's decision to restrict defense counsels examination of a witness, and restricting counsel's ability to put the question of the credibility is error. In **United States V. Olano,** 507 U.S. 725, 123 L.Ed 2d 508, 113S.Ct. 1770(1993) the Supreme Court held, (failure to submit materiality to the jury constituted error that was clear or obvious). In the instant case, the court, by restricting the defense query of the witness, deprive the jury of its "sale" right to decide the credibility of the witnes

Protection under Fifth Amendment and Sixth Amendment of the U.S. Constitution. See **United States v. Gaudin,** 515 U.S. 506 U.S. S. Ct 2310 132 L. Ed 2d 444(1995) (The court held that Fifth and Sixth Amendment require that all elements of a crime be submitted to the jury). More pointedly, petitioner argues that the credibility question is material; that the credibility is left up to a jury determination.

The trial court decision to restrict defense counsel from adequately presenting the question of credibility to the jury was prejudicous and must be proven by defendant. **Olano,** 507 U.S. at 734, 113 S. Ct. 1770. Mr. Robinson's testimony established material facts that formed the foundation of the government conspiracy charge in Count 1, which was essential to prove petitioner was a member of the Peoria conspiracy.

Of all the witnesses that testied for the government none could have link petitioner to the Peoria conspiracy but Mr Robinson. Had the jury determine the mental instability and his propensity to distort reality. Robinson's credibility would have likely prompt the jury to acquit the petitioner of conspiracy. Clearly petitioner was prejudice, and unquestionably petitioner's substantial constitutional right to fair and impartial jury verdict was denied.

When the right to a fair jury determination is impaired, the integrity of the judicial process fails, and underminds the fairness, integrity, of the public representation.

## I. GROUND NINE:

The trial court committed plain error in allowing Mr. Robinson to testify knowing his mental condition was questioned and would serve only to prejudice the jury determination. In her opening testimony before the jury Mr. Robinson testified in addition to his mental health problems, he had used drugs since age 9. TR. 72, *6-7, beginning initially with cough syrup and marijuana TR.72, *11 for the purpose of not hearing voices TR.72, *23-24.

The prosecutor then asked Mr Robinson how long had he used drugs, and determined he has used drug on a daily basis for 26 years TR.73,*11 The prosecutor ask Robinson, and so you were depressed from age 9? Robinson answered: "Well, I was just hearing voices then, When I was 11, that's when I got older and that was — when the paranoid started." TR.73, *12-14. Robinson was asked whether he was under psychiatric treatment TR.73, *19, Robinson's response was completely unrelated to the question; recalling "his father telling him all he'd hear voices ... and that some guy (the voice) threaten to kill his mother and father and burn the house down."

On cross examination defense counsel asked Robinson, Do you hate yourself, Robinson; replied; "Everyday." Counsel inquired; are you still depressed? Robinson stated; I take medication every day. ①

Robinson testified that he broke another inmate jaw because the inmate looked like he wanted to do something to him TR.*10-13. Mr Robinson's response to both the prosecution and defense's questions were confused and inconsistent. Defense counsel's attempt to establish the state of Mr Robinson's medical stability over release from the Illinois Department of Corrections in order to establish the credibility and reliability of Mr Robinson's testimony was met with resistance by the Court. The Court stated; Mr. Inman, can we move on to things relevant to this lawsuit and not this gentlemen's past condition TR.75,76* 25, 1-2. The Court: "Well, I dont think the details of which you've gone into this is relevant . . . but I dont want to dwell on condition at Tamma or other institutions.

page ③

The trial court substantially limited defense counsels voir dire of Mr Robinson's mental conditions and the medications he used Tr.76,*8-11, which effectively prevented counsels relevant inquiry as to the credibility, believability and competency of Mr Robinson's testimony. Mr Robinson's testimony was the cornerstone of the governments case, and went to establish the foundations for the introduction of other testimony linking petitioner to count I of the Peoria conspiracy Tr.40 *13-14 Mr. Robinson's testimony was essential to the government's case-in-chief, because it served to establish that petitioner and Mr Jennis (Dec) traveled from Chicago to Peoria in furtherance of the conspiracy. None of the governments witnesses who testified, could have provided this connection; without Robinson's testimony the government would not have met its burden of proving petitioner's involvement in the Peoria drug operation.

page 4

The trial court was aware of Mr. Robinson's severe mental problem problems and manic depression, and days before trial order Mr Robinson to be taken to a medical facility to examine by a doctor and prescribed the proper psychotropic medication.

Neither the trial court, nor the Government enquired whether Mr. Robinson's mental condition, or use of psychotropic medication to manage his manic depression disorder affected his ability to testify competently at trial, as a result, Mr. Robinson's testimony was markly incoherent and noticably inconsistent.

At trial the prosecutor asked Mr. Robinson," What medication are you taking now TR. 74, 18 ." Mr Robinson responded: "Manic depression Ativol to keep me from slowing down." TR. 74. 21.

② Ativol, is a psychotropic medication that is used in the treatment of schizophrenia and manic associated with bipolar disorder. Astra Zenca Pharmaceuticals LP, See Above wed site under Seroquel, available at www. ATIVAL. COM March 8, 2005.

1 - Argument

Federal Rules Criminal Procedure 52(b) Plain error

The Supreme Court made clear in it's holding in Johnson v. U.S. 461, 465 (1997) that failure to assert right usually result in forfeiture, but plain error mitigates). Mr. Robinson's mental condition was not disclosed to defense counsel prior to trial nor during pre trial discovery. The pain error doctrine recognizes that where a defendant's substantial personal right are at stake, the rule of forfeiture should bend slightly if necessary to prevent a grave injustice. Petitioner could not have known that the Court would not disclose to the defense the potential problematic and prejudicial affect of Mr. Robinson's testimony. Has counsel been apprised of Mr. Robinson's mental conditions, counsel would have moved to exclude his testimony, or in the alternative urge the court to give the jury precautionary instructions as to Mr. Robinson's propensity for inconsistent and general unreliable testimony, do to his mental state. See U.S. v. Baldgya 233 F.3d 674, 681 (1st Cir. 2000) ( pain error review because defendant failed to object to jury instruction at trial. This Circuit's holding in U.S. v. Nance 236 F.3d 820, 824 (7th Cir. 2000) follows the Supreme Court holding in Johnson, supra. Nance holds, (although defendant forfeits his right to appeal or to evidence used at sentencing, plain error review still appropriate.

As this petitioner has clearly
shown, his due process rights under
the Fifth Amendment of the United
States constitution were violated, and
his Sixth Amendment right to trial
trial have been demonstratively
violated.

Petitioner has shown that there was
an error on the part of the court,
and the error was plain because a
violation, the Sixth amendment right to
a jury trial is plain error. Likewise, this
petitioner has demonstrated that the error
affected a substantial right by denying
him the right to have a jury determinate
as to the credibility of a witness.
When there is a plain abuse of the
judicial process the fairness, integrity
of the public reputation is impair.
Further, consideration of the plain error
focused on the prejudice clear demonstrated
by the conviction on the merits of unreliable
testimony. The court is ask to consider all
constitutional claim demonstrated but not alleged
Cause in the constitution violations
are demonstrated and evident.
Prejudice is shown with the 262 months
sentence and conviction of the petitioner.

GROUND 11.

In its reponse, the government asserts that the admission of two tape recordings was permissible and counsel was not ineffective when failing to object. The government wholly misses the presented claim.

In his §2255 Motion, the petitioner asserted that the tapes were admitted through the testimony of agent ZAMBECK and then the government rested. No witnesses involved in the tapes were called or presented for cross-examination. As asserted in the §2255 Motion, the Supreme Court recently disavowed this practice in Crawford v. Washington, 541 US ___, 158 L Ed 2d 177 (2004), where the court held that the admission of a taped confession of a non-testifying witness violated the Confrontation right under the Sixth Amendment. As asserted in the §2255 Motion, the Sixth Amendment right stems all the way back from the history of "the Roman Times." Not only did the petitioner proceed under Crawford, but he also relied on Coy v. Iowa, 487 US 1012 (1988) and Lilly v. Virginia, 527 US 116 (1999). **Nowhere in the government's Response to Ground Eleven does the government counter this claim!**

The facts of this case are clear in regards to the two tapes. No party to the conversations was presented for cross-examination when the tapes were admitted. That, simply stated, is a Sixth Amendment denial of Confrontation under Lilly and Crawford.

In United States v. Jones, 371 F 3d 363, 369 (7 Cir 2004), the court reversed a conviction when holding that the defendant had not had the opportunity to confront his accuser:

> Crawford holds that the "Sixth Amendment demands what
> the common law required:  unavailability and a prior
> opportunity for cross-examination." Id. at 1374. Crawford
> curtails the inquiry into the statement's reliability
> by holding that "the only indicium of reliability suffic-
> ient to satisfy constitutional demands is one the Const-
> itution actually prescribes: **confrontation.** Id. Jones
> never had an opportunity to cross-examine Rock and thus,
> under Crawford, no part of Rock's confession should have
> been allowed into evidence.

In this light, the petitioner never had an opportunity to cross-examine the tapes or the parties in the tapes due to the government's admission of the tapes with its last witness and then immediately resting its case. This was a calculated move to deny the petitioner cross-examination of the tapes and witnesses, all if violation of the Sixth Amendment.

In the same suit, the Seventh Circuit reversed and remanded for a new trial in United States v. Gilbert, 391 F 3d 882 (7 Cir 2004) in relying on Crawford's holding that the admission of the defendant's "estranged wife" was error when the wife was not called to testify, and the evidence against the defendant was not strong. Further, a number of district court opinions have "followed" Crawford's lead. see generally: United States v. Saner, 313 F Supp 2d 896 (S.D. Ind. 2004); Murillo v. Frank, 316 F Supp 2d 744, 748-49 (E.D. Wis. 2004).

The government's argument and defense is based solely upon the "objective proof" that the government's witnesses were "truthful" when claiming others were involved in the conspiracy. The government wholly fails to address the clearly CONSTITUTIONAL claim that the tapes were admitted in violation of the Sixth Amendment, Lilly, and Crawford.

Furthermore, this claim is not "another example of a non-constitutional issue (evidentiary ruling) that was not raised and, therefore waived, on appeal." This issue is clearly based within the Sixth Amendment of the Constitution, and is also solidly grounded in the Sixth Amendment right to Assistance of Counsel. In the §2255 Motion at Ground Eleven, the petitioner cites a bevy of jurisprudence for the longstanding conclusion of law that counsel was ineffective when failing to object to the admission of the tapes and secure the petitioner's confrontation rights at trial, which would have affected the outcome of the jury verdict and likely resulted in an acquittal, as well as the fact that counsel

failed to raise these claims on appeal. The government did not counter the petitioner's claims except for a "bare denial" stating "The petitioner cannot raise it [Ground 11] in his § 2255 motion **without the meritless allegation that his attorney was ineffective.**" (Government's Response page 9) This bare denial does not overcome the facts and law established in the §2255 motion, and the petitioner has established the substantive denial of his right to confrontation and assistance of counsel herein.

For all of these reasons, this court should grant the §2255 motion, vacate the conviction herein, and grant the petitioner a new trial.

---

GROUND 12.

Next, the government asserts that counsel was not ineffective for failing to call an expert witness to rebut the claim that the cocaine base involved in the trial was "crack," and that cocaine base and crack are not synonymous.

Notably, the government argues that the petitioner has not shown what a purported expert witness would have testified to or how the witness could have changed the result of the case. Lastly, the government argues that the petitioner has not shown an expert witness was available of the import of the testimony.

In the §2255 motion at Ground Twelve, the petitioner asserted that failure to call an expert witness is ineffective assistance, citing from Rogers v. Israel, 746 F 2d 1288 (7 Cir 1984) and Miller v. Wainwright, 798 F 2d 426 (11 Cir 1986). Likewise, as an indigent defendant, the petitioner reiterated that the Criminal Justice Act, 18 USC §3006A, provides funds for expert witnesses, and due to petitioner's incarceration and inability to find and contact and retain an expert witness for trial, that duty fell on counsel's shoulders under the Sixth Amendment.

Contrary to the government's bare denial of this claim, the law

is well settled that "cocaine base" and "crack" are not synonymous. In
United States v. Edwards, 397 F 3d 570 (7 Cir 2005), the Seventh Circuit
distinguished "crack" from cocaine base under the Guidelines and clearly
stated "All crack is cocaine base **but not all cocaine base is crack.**"
This simple statement of law clearly indicates that the issue of crack
versus cocaine base is a significant claim. In fact, if the cocaine
base in this matter was not "crack," as asserted by the petitioner,
then his base offense level for 1.5 kilograms of cocaine base under
USSG 2D1.1(c)(7) would have been 26, and the petitioner would have faced
a guideline range of 70-87 months based upon his criminal history score
of II. Under Edwards, as well as United States v. Booker, 70 F 3d 488,
494 (7 Cir 1995), the petitioner has a valid claim that cocaine base
is not "crack" for purposes of the Guidelines, and counsel was ineffec-
tive when failing to secure an expert witness to rebut the evidence
offered by the government.

    In consideration of the foregoing, and the assertions in the §2255
motion, the governments unsupported bare denial, this court should grant
§2255 relief and vacate the sentence imposed and permit the petitioner
to challenge the "crack" findings at sentencing with a properly retained
expert witness.

--------

GROUND 13.

    In its response, the government urges this court to believe that
the petitioner claimed "refreshing recollection" with an agent's notes
is permissible under FRE 612 and the claim fails. To the contrary, the
claim presented is that the government failed to disclose the agent's
notes in discovery, and that the notes were "substantially related to
the guilt or innocence of the defendant...." Arguing that the agent's
report, made from the notes, was "discovered," the notes were not dis-

coverable" and thus no error occurred. To the contrary, the "notes"
were the direct result of the investigation, while the report was a
"hearsay" record of agent GETZ's investigation. Disclosure of the report
was made, while the notes were "secreted" until GETZ testified and used
the notes to "refresh his recollection." FRE 612 specifically exempts
the JENCKS Act, 18 USC §3500, from its requirement of disclosure after
a witness has testified. see United States v. MeBust, 857 F Supp 609
(N.D. Ill. 1994); United States v. Alex, 791 F Supp 723 (N.D. Ill. 1992);
and Clancy v. United States, 365 US 312 (1961). In United States v.
Hilbrich, 341 F 2d 555 (7 Cir 1965), the court held that "handwritings
or notes" were discoverable and "must be produced under" the Jencks
Act. Likewise, in United States v. Harrison, 524 F 2d 421 (DC Cir 1975),
the court clearly held:

> Rough, handwritten notes taken by Federal Bureau of
> Investigation agents interviewing eyewitnesses shortly
> after [the] robbery were "crucial evidence" required
> to be preserved **and produced.**

Thus, the law is well settled that the "notes" of agent GETZ were subject
to discovery.

Furthermore, the record is clear that counsel never sought disclosure
of the notes, nor did the government produce the "notes" after GETZ's
testimony. Such conduct belies the requirements of the Fifth and Sixth
Amendments and Brady v. Maryland, 373 US 83 (1963) and clearly establishes
the constitutional violations herein. Further, subsequent to GETZ's
testimony, and after having made numerous pre-trial discovery requests,
counsel failed to seek disclosure of the "notes" that GETZ used to refresh
his recollection. Such failure to seek disclosure and subsequent cross-
examination does not fall within the range of competent counsel as guar-
anteed by the Sixth Amendment and Strickland v. Washington. Thus, the
petitioner's rights under the Fifth and Sixth Amendments were violated,
and the government's bare denial falls short. This court should find

counsel was ineffective, that the government violated <u>Brady</u>, and vacate
the convictions herein and grant the petitioner a new trial.

———————

GROUND 14.

In GROUND Fourteen, the petitioner asserted that counsel failed
to raise a "viable defense" at trial. The government relies on the assert-
ion that counsel could not nothing more than "cross-examine and argue
the credibility of witnesses" to the jury. The government also asserts
that the petitioner has not identified a single witness or provided
any "affidavits" from any potential witnesses who could have testified
in his defense.

Contrary to the government's blanket denial and unsupported claim,
the petitioner did identify specific witnesses, including family members
and friends, who would have established that the petitioner was gainfully
employed, worked full-time in Chicago, and was not involved in drug
trafficking in the Peoria area. Counsel's failure to investigate these
witnesses and present them at trial was ineffective assistance. The
§2255 motion, filled with facts and caselaw, clearly supports this
position, and the government's bare assertion of unsupported claims
fails.

As cited in the §2255 motion, the failure to present a meaningful
defense is ineffective assistance. see <u>Montgomery v. Peterson</u>, 846 F
2d 407 (7 Cir 1988) and all of the law cited in the §2255 motion. Further,
failure to call witnesses is ineffective assistance. see <u>White v. Godinez</u>,
143 F 3d 1049 (7 Cir 1998). Even failure to investigate is ineffective
assistance, when the failure prejudices the defendant. In this matter,
the petitioner was clearly prejudiced by counsel's failure to investigate
witnesses, call witnesses, and present a defense at trial. Had petitioner
known counsel was not going to present a defense, he would have plead

guilty and received three points off for acceptance of responsibility.
Just those three points would have reduced the base offense level to
a 35, and with criminal history category II, the petitioner would have
faced a sentence of 188-235 months, some 28 to 74 months less than the
262-months he received. Clearly, counsel's ineffectiveness resulted
in a conviction and sentence and substantial prejudice under <u>Glover
v. United States</u>, 531 US 198 (2001). Had counsel pursued a defense as
requested by the petitioner, there is a reasonable likelihood that the
petitioner would have been acquitted, as the only evidence connecting
him to the charged conspiracy was "hearsay" which would have been rebutted
by his defense witnesses, employees, and inability to join a conspiracy
in Peoria.

This claim rests solidly on facts outside the record and requires
an evidentiary hearing to allow the petitioner to expand the record
and prove up his claims. At such a hearing, the petitioner would call
the following witnesses who would testify as:

- Sam Beelman, Beelman trucking, employer who would testified he employed petitioner full-time from 1999-2001;
- Rayner Covering Service foreman Richard (<u>Last Name Unknown</u>-to be discovered) who would testify the petitioner worked for Rayner in 1999-2000;
- Jim Carr, Thrall-Carr Steel, Chicago Heights, IL., who would testify the petitioner worked for him from (about) 1993-1997;
- Olivia Simpson, mother, who would testify the petitioner was full-time employed and did not associate or work with Burke MEANUS or Haywood Robinson;
- Geraldine Boone, aunt, who would testify the petitioner had no knowledge of Burke MEANUS's activities and did not associate or work with MEANUS and was not involved in drug trafficking;
- Wardell Pickett, co-worker, who would testify the petitioner was employed with him and the petitioner was not involved in drug-trafficking;
- Lilly Haley, aunt, who would testify that the petitioner had no dealings or interactions with MEANUS or ROBINSON and that the petitioner worked full-time and was not involved in drug-trafficking;
- Phyllis Haley, aunt, who would testify that the petitioner was employed full-time, spent his time taking care of his family, and did not associate with MEANUS or ROBINSON;

Robert Haley, uncle, who would testify that the petitioner was
    employed full-time, spent his time taking care of his family,
    that Burke MEANUS had been dealing drugs for over twenty years
    and the petitioner never associated with him or dealt drugs;

Cynthia Simpson, ex-wife, who would testify the petitioner is known
    as a hard-worker, always employed, and did not sell drugs;
    (Note: Ms. Simpson testified at petitioner's sentencing hearing
    in this matter and is familiar with the court.);

Shaluanda Simpson, daughter, who would testify the petitioner was
    full-time employed, a good father, never dealt drugs, and
    did not associate with Burke MEANUS;

Jason Simpson and Stephen Simpson, sons, who would testify their
    father was a hard-worker, fully employed, never dealt drugs,
    and did not associate with MEANUS or ROBINSON during the
    charged conspiracy;

Anthony and Clinton Jordan, brother-in-laws who would testify the
    petitioner employed them at his construction company, he was
    a hard and honest worker, and that he did not associate with
    MEANUS or ROBINSON or any others who dealt drugs.

These witnesses would have clearly cast a shadow of doubt on the govern-

ment's "circumstantial/hearsay" case and would have lead to an acquittal

by the jury if counsel had investigated the witnesses, called them at

trial, and presented a viable defense.

For all of these reasons, this court should convene an evidentiary

hearing, allow the petitioner to expand the record to support his claims,

then to find counsel was ineffective and grant the petitioner a new

trial herein.

————

GROUND 15.

The government asserts that no error under Apprendi v. New Jersey,

530 US 466 (2000) occurred at trial or sentencing because the petitioner

faced a sentence of "ten years to life" after the jury verdict. However,

the government misses the point. At the time Apprendi was decided in

June 2000, some two years prior to petitioner's trial and sentencing,

the term "statutory maximum" for purposes of the Sixth Amendment was

"the maximum sentence the court could imposed based solely on the facts

charged in the indictment, submitted to the jury, and proven beyond

a reasonable doubt." The Supreme Court made that law clear in Blakely
v. Washington 542 US ___ (2004). In its response, the government clearly
concedes that it was **"the district court's findings** as to drug quantities
[that] **enhanced the guideline minimum sentence to 262-months."** (GR p. 11).
This statement of fact and law clearly establishes the Apprendi error
as asserted. To the contrary of the government's claims, the district
court was not "authorized by verdict to sentence the petitioner to up
to life in prison." (GR p. 12). The district court was only authorized
to make sentencing findings consistent with the fifty grams of cocaine
base **only**, and the resulting level 26 guideline base offense level.

Furthermore, the government's claim that Blakely is not retroactive
and the petitioner's "claim is doomed" is patently wrong. While the
petitioner did cite to Blakely in his §2255 motion, his argument is
brought under Apprendi, and retroactivity is not a concern for this
court, as Apprendi was decided some two years prior to petitioner's
trial and sentencing. The law is clear that when sentence was imposed
in this matter, Apprendi precluded the court from imposing the 262-months
under the guidelines. Further, as argued in the §2255 motion, counsel
was ineffective when failing to assert a timely and proper Sixth Amend-
ment objection to the Apprendi error set forth herein.

Lastly, the government's claim that collateral attacks on the Guide-
lines "are not generally permitted" is squarely foreclosed by the Supreme
Court's decision in Glover v. United States, 531 US 198 (2001) where
the court held that counsel was ineffective when failing to object to
or raise on appeal an erroneous sentencing guideline determination which
unlawfully increased the sentence imposed. As such, the Sixth Amendment
claim brought against counsel and the 262-month sentence is properly
and solidly found in law.

WHEREFORE, for all of the foregoing reasons, this court should grant the Motion to Vacate and vacate the sentence and conviction in this matter and order a new trial beheld, or in the alternative, grant the Motion to Vacate sentence and resentence the petitioner according to the Fifth and Sixth Amendments as cited herein.

Respectfully submitted,

Sammie "Westside" Simpson
20507-424 PO Box 5000-H3B
FCI-Greenville, IL.
62246

### Proof of Service

I hereby certify that I have served a true and exact copy of the attached TRAVERSE/Response on the US Attorney, 2ll Fulton Street, Suite 400, Peoria, IL., on this __11__ day of May, 2005, by firstclass postage prepaid in full and deposited in the institution legal mail at FCI-Green-ville, IL.

Sammie Simpson

cc:  clerk of court
     file