

E-FILED
Thursday, 19 May, 2005 11:03:03 AM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
AT PEORIA

MAY 1 9 2005

JOHN M. WATERS, Clerk
U.S. DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

SAMMIE SIMPSON,              )
                            )
        Petitioner,         )
                            )
                            )   Case No.  05-1010
                            )
    -VS-                     )   Honorable Judge,
                            )   Joe Billy McDade
                            )
                            )
UNITED STATES OF AMERICA,    )
                            )
        Respondent.         )
                            )

### REPLY TO GOVERNMENT'S RESPONSE TO PETITIONER'S
### § 2255 PETITION AND MEMORANDUM IN SUPPORT

Now comes Petitioner, Sammie J. Simpson Jr. in his proper
person, and respectfully submit his reply to the Governments
Response to Petitioner's petition under 28 U.S.C.  § 2255 and
Memorandum in support, and asseverate as follows.

### A.   HISTORY OF THE CASE

1.   History of The District Court Proceeding

Petitioner was indicted and convicted by a jury trial
in the District Court for the Central District of Illinois, for
conspiracy, in violation of 21 U.S.C. § 846, (R.27,80,81) and
on October 18, 2002, the petitioner was sentenced to 262 months
imprisonment of the conspiracy on the conspiracy charge (R 108)

2.   Appellate Court Review

On july 24, 2003, petitioner's conviction and sentence was affirmed by the Seventh Circuit Court of Appeals. See **United States v. Simpson**, 337 F. 3d. 905(7th Cir. 2003) The following issue were raise and rejected.

> a.   The district Judge biased the defendant by taking a overactive role during the trial.
>
> b.   The distrcit Judge erred in disallowing the use of certain impeachment of government witnesses.
>
> c.   The distrci court erred when it dendied a downward departure; and
>
> d.   The district court imposed a sentence that was disparate to co-defendant

Id. 337 F. 3d at 907-09.

3.   Petition Under 28 U.S.C. § 2255

This reply and memorandum is in response to and support of petitioner's petition filed pursuant to 28 U.S.C. § 2255 claiming a right to be released upon the grounds that his sentence was imposed in violation of the constitution, and the laws of the United States, and his sentence was in excess of the maximum authorized by law.

## B.   STATEMENT OF FACTS

Petitioner proceeded to trial to attest his innocense in the charged conspiracy, and although petitioner had a constitutionally required counsel, he did not have effective assistance of counsel at all stages of his defense. Counsel failed to pursue substantial issues and diligently argue the evidence relating to witnesses testimony as to

-2-

drugs charged to the conspiracy and those drugs that was rea-
sonable to petitioner. The record clearly show petitioner was
not a part of the conspiracy at its beginning, And at signifi-
cant times during the conspiracy he was incarcerated and did not
know of or maintain contact many of the of the named co-cospira-
tors counsel failed to employ expert witness to challenge the
government's unproved proffer that the cocaine involve in the
conspiracy was in fact crack cocaine. The trial court's improper
intervention in the examination of the witnesses severely prejudice
the jury by undermining defense counsel's clearly correct procedural
examination of the witnesses in soliciting facts of the case and
to impeach even clearer incredulous testimony.

Their was no actual evidence proving up the conspiracy against
petitioner. None of the witnesses testified to an agreement with
petitioner to posses or distribute drugs and did not meet its burden
beyond a reasonable doubt that petitioner was a member of the con-
spiracy.

Petitioner challenges both the constitutionality of his
conviction and sentence.

## C.   Arguments

28 U.S.C. § 2255 require a prisoner's sentencing court to
release him of the prisoner's sentence was imposed in violation of
the laws of the United States, if the court was without jurisdiction
to impose the sentence if the sentence exceeded the maximum authorized
by the law, or if the sentence is otherwise subject to collateral
attack. The statutes provides that if the court finds for the prison-
er, it may resentence him or her act the conviction aside, as is appro-
priate.

-3-

## A.   GROUND ONE

### 1. Government Response

The Government asserts that the petitioner claim that he was prejudiced by the dictrict court's failure to resolve disputed issues as to the drug overdose death and append a copy of the court's determination as required by Rule 32.

Second, The petitioner's contention that the district court did not resolve the dispute over the drug death is wrong.

Third, The presentence report did attributed the drug overdose of William Gilmore to the conspiracy,despite the jury finding to the contrary.

Fourth, At sentencing the petitioner counsel objected to the two additional levels for the drug overdose death, and the district court granted the objection, findind the base offense level to be 36 instead of 38.(R.99,Add.p33).

Fifth, The dictrict court not only resolve this dispute, but resolved it in the petitioner's favor. He can show no prejudice from the dispute being resolve favorable to him.

Six, It is unknown to the counsel whether the district  court appended a copy of the court;s determination of this issue to the presentence report provided to the Bureau of Prisons, as required by Rule 32. See Fed.R.Crim.P. 32(i)(3)(C). Failure to do so, does not provide any relief to the petitioner.

Seven, The portion of this claim is an example of a nonconstitutional issue that was not raised, and therefore waived, on direct appeal.

## 2.    Petitioner Reply

Many of the Government's responses do not fully address petitioner's claims, for those that do, we make no comment, and for those requiring a more supererogated reply, we preceed as follows:

### Argument

Petitioner's Reply: Sammie Simpson, position in "A Ground One" of the original § 2255 motion may have been misconstrued by the Respondent. It is the petitioner's position that his rights under the Fifth and Sixth Amendment to U.S. Constitution were violated when the distrcit court failed to make an oral or written specific finding on the record, as to the exact reason why it aggred with the Probation Officer Department. The government attorney's assessment and finding in the PSR that Sammie Simpson, was (a) the Leader or Supervisor of the conspiracy (b) that all crack is cocaine base but not all cocaine base is crack and whether this distinction was meaningful for purpose of the enhanced penalities for cocaine base offense under 21 USC § 841(b)(1)(A) and (B) how the petitioner sentence was determined to be a 20 years mandatory minimum penalty.

Moreover, defense Counsel was ineffective for failing to properly lodge specific objections to each ground presented herein. On the record as required under the F.R.C.R. P. Rule 12.

-5-

During Sammie Simpson, sentencing hearing held on Oct 18, 2002, the district court sought and received the opinion of most parties presented including Mr. Spencer Daniels (Defense Counsel), Bradely W. Murphy, (AUSA) and the Probation Officer.

At some point during this same hearing the district court asked the parties whether there were " any mandatory minimum " T.SH. #55. The district court then stated "that would be 240 months " T.SH #55 The Probation officer, states, "yes, sir  T.SH. #55

Based on the inaccurate assessment of the probation officer, Mr. Simpson base offense level starts off at 240 months to life imprisonment instead of the original 120 months to life term of imprisonment pursuant to 21 USC 841(b)(1)(A)(i) and (iii).

Without ever determining exactly how or why Mr. Sammie Simpson, sentence warranted a 20 years mandatory minimum penalty, Everyone including the district court and Mr. Daniels aggreed with probation officer's assessment See **United  States v. Studley,** 47 F. 3d 569 (2nd Cir 1995).

According to title 21 U.S.C. § 841 (b)(1)(A)(i),(iii)(heroin) (cocaine base), staes in pertinent part, such person shall be sentence to a term of imprisonment which  may not  be less than 10 years or more than life and if **Death or Serious bodily Injury** RESULTS FROM THE USE OF SUCH SUBSTANCE SHALL BE NOT LESS THAN 20 YEARS OR MORE THAN LIFE.

-6-

Because defense counsel Daniel failed to simple read a copy
of the Federal Rules Criminal Procedure, the probation officer
was allowed to mislead the court into believing that the
petitioner faced a 20 years mandatory minimum sentence based
on the death of William Gilmore, knowing that the district court
had already ruled on the death of William Gilmore, as being
untributed to the conspiracy  T.SH. 47.

This was the only way to attribute a 20 year mandatory minimum
penalty to the petitioner from the very outset of the proceedings.

Defense Counsel Mr. Daniels Representation failed below an
objective standard of reasonableness with respect to the above listed
error.

Additionly, the district court felt the sentence he was to
impose by policy was "slightly over kill". T.SH.67

The Fifth and Sixth Amendment not only apply to trial matter,
but extends also to sentencing errors as well.

It was the Sole Responsibility of the defense counsel Mr.
Daniels to ensure the petitioner rights were protected at each
stage of the proceedings.

This was not done and as a result the aforementioned mistakes
were allowed to occur unchecked and never corrected developing a
complete and adequate record  for appeallant review on direct appeal.

The PSR further enhanced the Record when it stated in the
Sentencing Recommendation, under the Statutory Provision that Mr.
Simpson's Custody Level was at least 20 years to life.  327 to 405
months imprisonment.

However, in the Statement of Reasons, pg. 1 of 2, Guideline

-7-

Range determined by the Court, it list an imprisonment range of 262 to 327 months; Mandatory Minimum 120 months, instead of the actual record findings of a 240 month mandatory minimum.

Mr. Daniel's failure to lodge an objection, and the district court's absence on the record orally or written of any specific findings as to the above referenced matters, in light of the U.S. Supreme Court decision in Apprendi v. New Jersey, 530 U.S. 466 (2000), created a direct violation of Mr. Sammie Simpson's fifth and sixth Amendment rights to the U.S. Constitution.

This further subjected Sammie Simpson to a maximum penalty of life imprisonment under section (b)(1)(A) of Title 21, instead of a twenty year maximum prison sentence under section (b)(1)(C) of said title.

The probation dept., then determine that Simpson qualified for two separate enhancements. The first being a leader, manager or supervisor pursuant to Title 18 U.S.S.G. § 3B1.1(c), 2 point and the cocaine base involved was for the purposes of the 100 to 1 ratio penalty, was in fact, the cocaine base form of crack. (Both enhancements shall be addressed later in better detail).

Regarding the latter two enhancements, the jury was never required to find these aggravating factors nor, was Mr. Simpson charged with, or indicted for, being anyones leader, manager or supervisor.

Nor, were there any evidence introduced at trial demonstrating which form of crack (cocaine base) the government submitted to the lab for analysis purposes. See, 18 U.S.S.G. § 2D1.1(c) et.seq.,

-8-

Amendment 487, § 3B1.1(c), Fed.R.Cr.P. Rule 32 et.seq., Apprendi
v. New Jersey, 530 U.S. 466 (2000); Glover v. United States, 531
U.S. 198 (2001); see also, United States v. Nance, App.No. 00-1836
(7th Cir. 2000).

It should be further noted that Sammie Simpson informed the
Court during sentencing that he had not properly reviewed the PSR
prior to the imposition of sentencing. However, the district court
would not continue the matter for a later date.   T.SH. 18.

### Conclusion

Petitioner Sammie Simpson believes he has made a colorful showing
of a direct violation of his Fifth and Sixth Amendment rights to the
U.S. Constitution and as such moves this court for an order vacating
the sentence in this matter, scheduling this matter for an evidentiary
hearing creating an oral and written record as to exactly why Mr.
Sammie Simpson, (a)  received a two point enhancement as a leader,
manager or supervisor pursuant to title 21 U.S.S.G. § 3B1.1(c); (b)
that all crack is cocaine base but not all cocaine base is crack
and whether distinction was meaningful for purposes of the enhanced
penalties for cocaine base offenses under 21 U.S.C. § 841(b); and
(c)  how Sammie Simpson sentence was determined to be a 20 year
mandatory minimum penalty, instead of a 20 year maximum penalty.

-9-

## B.   GROUND TWO

### 1.   Government Response

The petitioner claims that he was denied a fair trial when the district court allowed the prosecution to ask leading question during direct and cross examination.

Second, The claim is not specific as to any ruling by the court and is thus undeveloped.

Third, The petitioner proves no authority for his contention that it was error to ask leading question on cross-examination.

Four, Ordinarily, leading questions are allowed  on cross-examination. Fed.R.Evid.611(c).

Five, This claim is an example of a nonconstitutional issue (an evidentiay ruling) that was not raised and therefore waived, on disrect appeal.

Six, The petitioner can not raise it in his § 2255 motion.

### 2.   Petitioner Reply

The petitioner will Reply upon Original position as presented in the originally filed § 2255 motion.

The record itself reflects each instant of the Government's leading questions and defense counsel's complete lack of objections to same.

-10-

## Conclusion

This court should Rule that the government direct examination of all witnesses were leading and defense counsel failed to Adequately object to any of the leading questions and thus rendered ineffective assistance of counsel representation to his client, Sammie Simpson.

This matter should be vacted and remanded for a new trial in light of the violation. This matter should be further Schedule for an Evidentiaty Hearing.

## C.  GROUND THREE

### 1.  Government Response

The petitioner claim that he was prejudice by the district court's failure to comply with Rule 32.

In an undeveloped argument, the petitioner faults the district court for failing to make an explicit factual finding as to drug type and quantities attributed to the petitioner.

The petitioner's claim is wrong. The dictrict court did make finding as to all objections raised as to quanties of the drugs (R.99,Add,. pp.27,30,32,33) contrary to the petitioner's claim, the district court did resolve the dispute as to drug quantities as required by Rule 32.

This claim is another example of the non-constitutional issue that was not raised and therefore waived this issue, it is not cognizable in a § 2255 motion in any event. Violation of Rule 32(a) does not involve a fundamental defect which inherently results in a complete miscarriage of justice).

### 2.  Petitioner's Reply

Many of the Government responses do not fully address petitioner's claim, for those that do, we make no comment, and for those requiring a more supererogated reply, we proceed as follows:

### ARGUMENT

Petitioner Sammie Simpson's position as set forth in C. Ground #3 of his original §2255 motion have been misconstrued by Respondent. Therefore, it is Petitioner' position that his right under the Fifth and Sixth Amendment of the United States Constitution were violated

-12-

The court failed to make the requisite Rule 32 finding as to the reliability of the information relied upon and make a particularized finding as to whether the activity was foreseeable to the petitioner. Further, the court failed to articulate the reasons underlying the sentence imposed on petitioner.

### Sentencing Hearing

On October 18, the district court conducted the sentencing hearing of Sammie Simpson, the parties presented and participating were Spence Danilels, representing the petitioner, Assistant United States Attorney Bradley W. Murphy, and Mandam U.S. Probation Officer.

The preceeding commenced with the trial court addressing letters filed by defendant's Sammie Simpson, Jerry McGinnis, and Levence Simpson asserting ineffective assistance of counsel claim. The court conducted and inquiry before allowing defendants to withdraw and preserving their claims for a later collateral review. Tr. 4,5,6,7,8, 9,10,11,12,$^{*}$1-25.

The court proceeded with the sentencing hearing by first determining the objections to the PSR before deciding the guideline sentence.

Mr. Daniels first objected to the PSR increase in drug quantity through witnesses testimony where there was no evidence at trial of increased activity PSR, 5, at 15, 16, TR.20,$^{*}$15-19 Mr. Murphy AUSA noted he outlined the primary witnesses and not only did quantities increase but so did frequency. Tr.22$^{*}$8-15. The court adopted the Government's position Tr.22.$^{*}$20-1 without making a particulerized finding.

-13-

The PSR reported Heather Wise testified the purchased one-forth of a gram of heroin 9 times totalling 5 grams PSR 5,6,*17-18 Mr. Daniels objected that Heather Wise never testified Tr.23,*1-7 The court did not make a specific finding, or otherwise state for the record it will not rely on the information at sentencing.

Burke Meanus testified, " That when he got arrested. . . that was his first time he attempted to sell heroin." The PSR reported that Burke Meanus bought 20 grams of heroin 5 times between 1999-2000.TR.29,*15-17 Mr. Daniels objected to the accuracy of the PSI drug calculation. Mr. Meanus testimony was unreliable. The court adopted the Probation Officer position without a specific finding, 1B1.3(a), USSG or as to disputed facts Rule 32(a)(c)(D) Fed.R.Crim.P.

The PSR reported that from June 1999 through May 2000 Jerry McGinnis, transported $5000 to $6000 worth of heroin, $150 to $200 per gram from Chicago to Peoria twice per month and that Sammie Simpson and McGinnis transported at leats 33 grams, $5,000 divided by 150 equals 33, twice per month, for a total of 66 grams per month totalling 727 grams of heroin Tr.26,*12-25, and 27,*1-4 Mr. Daniels objected that the weight of the drug was not 726 grams, but much less, at most the quantity was much less, at most the quantity was 10 grams per week. Mr. Simpson was 10 grams per week.

Mr. Simpson was incarcerated during much of the period in the Cook County Jail TR.27,*12 and the drug were not responsible forseeable to him.

-14-

The court adopted the U. S. Probation position. The court did not make a finding as to disputed facts. Rule 32(a(c)(D). The Court did not make a particularized finding U.S.S.G.

Mr. Daniels objected to the PSR at No. 9, para. 31, which reports Mr. Simpson and Jerry McGinnis brough 3 Ounces of Crack to Daniel Parker for eight weeks from June through July, 2000, and 95 grams of heroin from July through August, that Daniel Parker testified, that some of the heroin he was selling was bought from defferent sources. Parker was not charged in the conspiracy with Mr. Simpson.

> AUSA Murphy indicted that according to his notes
> Daniel Parker testified to buying 3 ounces of
> Crack in early 2000, 10 grams of heroin on 8
> different times.

The court resolve disputed facts Rule 32(a)(c)(D), but made no specific finding 1B1.3(a) United States sentencing Guidelines.

Petitiner contents thathis constitutional right to due process and Federal Rules of Criminal Procedure 32 were violated where the trial court failed to make a specific finding as to drug amount attributable to petitioner or was reasonable foreseeable to petitioner for purpose of determining the sentence to be imposed under 2D1.1(a) of the Sentencing Guidelines.

32(a)(e)(D) require the court to resolve the dispute matter prior to sentencing Mr. Simpson, and to articulate its reasons underlying the sentence imposed.

The district court violated Mr. Simpson due process right when it fail to enunciate specific reasons underlying the sentence imposed.

-15-

<u>Counsel Performance Fell Below an Objective Standard of Reasonableness</u>
<u>Failure to Make a Particularized Finding</u>

Although counsel raised petitioner's objections to drug amounts his performance fell below an objective standard reasonableness when counsel did not adequate object to the court  attributing the entire drug quantities to petitioner by erroneous relying upon the Pinkington thery not applicable in the case at bar. Ineffective assistance of counsel is not a newly raised claim, Petitioner asserted counsel's representation may have been acceptable at certain stages of his performance throughout the preceedings were not ineffective and deficient See <u>Nevarez-Diaz v. United States,</u> 870 F. 2d 417(7th Cir. 1989)(Trial counsel's ineffectiveness constitute cause, and the court's failure, along with the prosecutor's failed to adequately inform. . . amount to a fundalment miscarriage of justice and require evidentiary hearing.

The testimony of the witnesses were inconsistent and grossly unreliaible and petitioner's rights persuant to Rule 32(c)(3)(D) and the due process clause of the United States Constitution was violated, were Rule 32 (c)(3)(D) require that petitioner's sentence be based upon accurate information.

The United States Supreme Court in <u>United States v Tucker</u>, 404 U.S. 443 1972, held ( that there is a due process right to be sentence on the basis of accurate information).

-16-

Rule 32(a)(3)(D) of the Federal Rules of Criminal Procedure, and Section 1B1.3(a)(1)(B) of the United States Sentencing Guidelines require the sentencing court to resolve disputed maters in the presentence report and to make a individualized finding or state its reason why such finding is not necessary or that the court does not intend to rely on such disputed information at sentencing.

Moreover, in the case of a conspiracy or a jointly undertaken criminal activity involving disputed drug quantities, the court must make a "particularized finding as to drug amounts reasonable foreseeable to a defendant, seperate and apart from the conspiracy.

The Court did not follow the provisions of Rule 32(a)(3)(D) or 1B1.3(a)(1)(B) in this case, and at the sentencing of Mr. Simpson when the Court heard objections to the presentencing report.

In Objection No.3, references to the PSR page 5 and 6, para. 17 and 18 concerning Heather Wise, the court did not make a specific finding as to the more than 5 grams of heroin reported in the PSR that was attributed to Mr. Simpson that Heather Wise never testified to, Nor did the court state on the record that it did not intend to rely upon this inaccurate information at sentencing. Yet, this inaccurate information was in fact used to sentence Mr. Simpson to a term of imprisonment of 262 months, far greater than that had this Court made such requisite finding. The Court failure to make a particularized finding violated Mr. Simpson Fifth and Sixth Amendment rights of the United States Constitution.

In Objection 6, references to the PSR page 8, para. 27, concerning Mr. Simpson and Jerry McGinnis, and the drug weight and

calculations made to determine the drug amount. The Court did not make a particularized finding in this objection where several events questioned to accuracy of drug amount attributed to defendant. Most significantly,attorney Daniels argued that Mr. Simpson was incarcerated in the Cook County jail during must of the time these drug transactions took place. Attorney Daniels brought to the Court's attention that other testimony proved the drug weights were must less than that reported in the PSR account. Mr. Simpson does not argue whether the diluted substance is significance to the drug weight. Aside from the fact that the court committed plain error form relying of the unsupported evidence of drug amounts in sentencing Mr. Simpson, the Court's failure to make a "particularized finding" as to those drug amounts specifically attributable to Mr. Simpson, in light of the fact that his incarceration stopped the flow of drugs used in the Probation Officers calculation. In otherword, the Court allowed Mr. Simpson to be sentence based on a "time peroid" in which drug transcations took place and which he was alleged to be the supplier, when he was verifiably in the custody of the Cook County authorities. The Court's failure to make the requisite Rule 32 and § 1B1.3 findings in this instance violated not only the letter of the law, but the constitutional protections under the Fifth and Sixth Amendments that is the foundation upon which our founding father premise. The 262 month sentence Mr. Simpson received directly resulted from this Court's failure to take judicial notice of the petitions rights.

In other objections illustrating the court's failure to make a particularized finding, the record speaks for itself and have been completely delineated through these pleadings.

(17)a.

In objection No.6, references to the PSR page 8 and para. 27, Burke Meanus asserts that he bought 29 grams of heroin 5 times between 1999 through 2000, attorney Daniels brought to the court's attention that Burke Meanus **testified** that, "That when he **got** arrested . . . that was his first time he attempted to sell heroin." The short notation in the PSR made not reference to Burke Meanes's statement of not selling heroin before.

The Court after hearing argument from both sides, but without making a particularized finding as to the drug amount reported in the PSR amounting to 100 grams, adopted the Probation Officer's position. The Court did not follow the provisions of Rule 32(a)(3)(D) or section 1B1.3(a)(1)(B) to first, resolve the disputed drug amount in the PSR, and second, to make a particularized finding whether the drug amount was reasonable foreseeable to Mr. Simpson.

In Objection No.9, Paragraph 31. It is not clear how the Court arrived at its conclusion. The Court admittedly stated its notes were unclear, nonetheless, the Court found that there were 140 grams and made no particularized finding as to the drug amount reasonably foreseeable to Mr. Simpson.

In objection No.10, para.32 the Court found that the conspiracy was responsible for the drug amount. The did not resolve disputed information or make a specific finding as to petitioner.

In objection 12, para. 26 The court adopts the probation officer's position, and made no particularized finding.

In objection 13, para. 41. The Cour ask defense couns to agree with the Governments chart relevant to the drug amounts, with exception to the disputed amounts as to one paragraph.

(17)b.

The trial court did not affort petition his constitutional protected
due process rights when it attributed the entire drug quantity
to petition charged in the conspiracy, and did not make a Rule 32
finding as to the accuracy of the drug quantity attributable to
petitioner for purpose of sentencing. Further, the court should
have consider such an amount tandem with the amount of drugs envisioned
within the scope of the petitione's specifice agreement within the
group (conspiracy See: **United States v. Flores**, 5 F.3d 1070, 1083
(7th Cir. 1993) (It is the Government's burden to prove that the
defendant's specific agreement encompassed the amount of narcotices
alleged; see also **United States v. Majica** , 984 F.2d 1326, 1443
(7th Cir. 1993)

Rule 32 require the Court, in order to protect a (defendant)
it obligation to employ fair procedures to determine the accuracy of
the information used at sentencing, because the Court failed to employ
a fair procedure petitioner's guidelines range is level 38 and
he received a 262 month sentence.

The Court in **United States v. Stadley**, 47 F.3d 569 (2rd Cir.
1995) N.2-3-4-5-6-7. held (the guidelines also require the court
to make a particularized finding of the scope the criminal activity
agreed upon by the defendant): This holding is consistent with the
decisions of other circuit that have considered this issue:
**United States v. Anderson** 39 F.3d 331, 351-2 D.C.Cir. 1994: and
**United States v. Bush**, 28 F.3d 1087; **United States v. Eubnonwan**,
992 F.2d 70, 72-4 (5th Cir. 1993; **United States v. Coonce,** 961 F.2d
1268, 1275 (7th Cir. 1992).

(17)c.

Under the law the Court is allowed to determent drug type and quantity, but the court is cautioned to take notice of petitioner's due process protections not to be sentence based upon inaccurate information, even if such information is drug quantities. See: **United States v. Haddon**, 404 U.S. 1512 (1991)

### Conclusion

Petitioner has demonstrated that his contitiutional right to Due Process were violated where the trial court failed to afford petitioner the protection at sentencing to be sentence base on accurate infromation as required under Rule 32(c)(3)(D) of the Federal Rules of Criminal Procedure as to drug quantities attributable to petitioner for purpose of sentencing. Further, petitioner has demonstrated the his Sixth Amendment right to effective counsel at all stages of the proceeding were violated.

The Petitioner moves this Court to further consider the fact that his Sixth Amendment right were violated where the district court failed to provide petitioner with effective assistances of counsel when counsel fail to object to the Court not sentencing petitioner based upon accurate information and to make a explicit finding as to the drug attributable to petitioner.

Petition aver that cause is shown by the constitutional violation and counsel's failure to object to the Court's error at sentencing.

Prejudice is demonstrated by the amoount of actual time petitioner received 262 months based upon the court's error and counsel's ineffectiveness and deficient performance. The Petitioner therefore moves this Court to vacate, set aside, and remand this matter for resentencing and an evidentiary hearing.

(17)d.

**D.    GROUND FOUR**

1.    Government Response

The petitioner claims that his sentence should be set aside because the district court failed to make a specific finding as to the drugs attributed to the petitioner.  The petitioner wrong.

The district court heard and considered an objection to ¶41 of the presentence report.  That paragraph found that the petitioner was responsible for trafficking in excess of 10,000 kilograms of marijuana equivalent.  (R.99,pp.9-14)  The district court resolved the objections to the drug weight, finding a base offense level of 36.  (R.99,Add.pp.32-33)  That finding attributes more that 10,000 kilograms of marijuana equivalent to the petitioner.  His assertion that no finding was made is false.

The petitioner's claim is an attack on the district court's method of applying the Sentencing Guidelines to his case.  As sure, he is trying to raise an issue which is not cognizable in a § 2255 motion.  Collateral attacks on the implementation of the United States Sentencing Guidelines are not generally permitted.  Scott v. United States, 997 F.2d 340, 341-43 (7th Cir. 1993); Bugg v. United States, 153 F.3d 439, 443 (7th Cir. 1998).

2.    Petitioner Reply

It would appear from the above response that the Respondent has misconstrued the Petitioner's position again.  The Petitioner's position is this, when the district court adopted the findings of the probation dept., without making an independent specific finding of fact as to exactly why it felt the Petitioner should be held responsible  for entire drug amounts involved in the conspiracy.

Especially, in light of the fact that the jury only found him responsible for possessing with the intent to distribute 50 grams of cocaine base (crack) and

-18-

1 kilogram of herion.  It became crucial for the district court to state its

reasoning varbelly and in writing on the record with specificity, so that on

appellate review, the Court of Appeals, as well as the Petitioner himself

possess a clear understanding of exactly why the entire drug amount was attributed

to him, in violation of the Fifth Amendment to the U.S. Constitution.

The defense counsel was ill prepared for the sentencing hearing with respect

to this issue.  It was his responsibility as the Petitoner's counsel to seek a

specific verbal and written finding from the district court as to why exactly it

chose to adopt the findings of the PSR/probation dept.

Because the defense counsel failed to do so, it rendered woeful representation

on behalf of his client Sammie Simpson, and caused the Petitioner to receive

ineffective assistance of counsel in violation of the Sixth Amendment to the U.S.

Constition.

This failure by counsel to request a specific verbal and written finding

from the district court further prejudiced the Petitioner and contributed to the

actual excessive prison sentence he received 262 months.  See Glover v. United

States, 531 U.S. 198 (2001).

The Petitioner will now attempt to explain in full detail why his rights

were violated and why not only the Seventh Circuit Court of Appeals may agree

with his assessment of the facts as presented, but also why the U.S. Supreme

Court quite possibly may agree with his position.

Lending support will be Apprendi v. New Jersey, 120 S.Ct. 2348 (2000); Adams

v. United States ex.rel. McCann, 317 U.S. 269, 275-76 (1942); McMann v. Richardson,

397 U.S. 759 (1970); Coyler v. Sullivan, 466 U.S. 335 (1980); Kimmelman v.

Morrison, 477 U.S. 365 (1986); Jones v. United States, 526 U.S. 227 (1999);

In Re Winship, 397 U.S. 358 (1970); and United States v. Nance, App.No. 00-1836

(7th Cir. 2000).

**PETITIONER WAS DENIED THE EFFECTIVE ASSISTANCE OF
COUNSEL, AT SENTENCING, IN VIOLATION OF THE SIXTH
AMENDMENT TO THE UNITED STATES CONSTITUTION**

**A**

Counsel rendered ineffective assistance when he failed to object at sentencing,

on Fifth and Sixth Amendment Gounds, under the U.S. Constitution, when the

District Court determined this Petitioner was subject to the Statutory Maximum

Sentence of Life Imprisonment found in Title 21 U.S.C.S. § 841(b)(1)(A)(on Count

One), by a Preponderance of the Evidence, in light of Apprendi v. New Jersey,

120 S.Ct. 2348 (2000), United States v. Nance, App.No. 00-1836 (7th Cir. 2000),

and the jury instruction given in this case.

**Discussion:**

The Sixth Amendment to the U.S. Constitution, as the Court is aware, guarantees

criminal defendants the right to counsel.  Strickland v. Washington, 466 U.S. 668

(1984).

This right to counsel includes, but is not limited to, protecting a defendant's

right to a fair sentencing hearing as well as a fair trial, because counsel's skills

and knowledge are necessary to accord defendants "ample opportunity to meet the

case of the prosecution."  Adams v. U.S. Ex.rel. McCann,317 U.S. 269, 275-76 (1942).

Because counsel plays such a critial role, the United States Supreme Court

has held that:

> ". . . the [constitutional] right to counsel is the
> right to effective assistance of counsel."  McMann
> v. Richardson, 397 U.S. 759, n.14 (1970).

Thus, if a defendant's counsel fails to render adequate/effective legal

assistance, a defendant's Sixth Amendment rights are violated.  Coyler v. Sullivan,

446 U.S. 335, 344 (1980).

In order to prevail on a claim of ineffective assistance of counsel within

-20-

the framework established by the U.S. Supreme Court, in Strickland, supra, a defendant must satisfy a two-pronged test.

A defendant nust show (1) that counsel's performance fell below an objective standard of ressonable; and (2) that there is a reasonable probability that, but for counsel's objectively unreasonable performance, the result of the proceeding would have been different. Id. 466 U.S. at 688-89.

In Strickland, supra, the Court stated that "judicial scrutiny of counsel's performance must be highly deferential," and added that "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id.

However, there are cases where:

> ". . . A single serious error may support a claim
> of ineffective assistance of counsel." Kimmelman
> v. Morrison, 477 U.S. 365, 385-87 (1986)

The Court found that this "single serious error" could cause counsel's performance to fall "below the level of reasonable professional performance," even where "counsel performance at trial [was] generally credible enough," and even where counsel had made "vigorous cross-examination, attempts to discredit witnesses, and [an] effort to establish a different verson of the facts." Id. 477 U.S. at 386.

In the instant case, counsel rendered ineffective assistance, at sentencing, when failing to object to the teh District Court's use of a Preponderance of the Evidence Standard to Find Petitioner was Subject to the Enhanced Provisions of Title 21 U.S.C.S. § 841(b)(1)(A), concerning Count One, although it failed to instruct them that the Government must prove (and that it must find) beyond a reasonable doubt, at least 50 grams of cocaine base was involved in said count.

-21-

### PETITIONER'S SENTENCE ON COUNT ONE OF THE
### INDICTMENT WAS IMPOSED IN VIOLATION OF THE
### FIFTH AND SIXTH AMENDMENT TO THE U.S.
### CONSTITUTION

As this Honorable Court is aware, in Jones v. United States, 526 U.S. 227 (1999), the United States Supreme Court addressed the question of whether the penalty enhancement section of a multipart federal statute (the Federal Carjacking Statute) defined a separate crime or was merely a penalty provision.

The sentencing judge viewed the provision in question as a sentencing factor and, accordingly, enhanced the defendant's sentence using facts that had, inter alia, not been submitted to the jury for its determination.

On certiorari review, the Supreme Court reversed and remanded, after concluding that each portion of the statute, including the provision setting forth the believed sentencing factor, defined a separate and distinct offense, but made clear that its decision did not announce a new principle of constitutional law, but:

> ". . . merely interpret[ed[ a particular federal
> statute in light of a set of constitutional
> concerns that have emerged [in prior decisions]."
> Id. at 251, n.11.

Nevertheless, the Court broached the broader question of whether the Fifth and Sixth Amendment allow:

> ". . . judicial factfinding by a preponderance
> [of the evidence standard], to support the
> application of a provision that increases the
> potential severity of the penalty for a variant
> of a given crime."  Id. at 242.

In footnoted dictum, the Court stated that:

> "[U]nder the due process clause of the Fifth
> Amendment and the notice and jury trial
> guarantees of the Sixth Amendment, any facts
> other than prior convictions, that increases
> the maximum penalty for a crime must be
> charged in the indictment, submitted to a jury,
> and proven beyond a reasonable doubt. Id. at 243,
> n.6.

-22-

However, while the Court did not articulate a new principle of constitutional law, in Jones, supra, it reexamined its prior decisions in this area and confirmed, as a rule, the principle first expressed in Jones, in the case of Apprendi v. New Jersey, 120 S.Ct. 2348 (2000) that:

> "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Id. at 2362-2363.

Specifically, in Apprendi, supra, the Court held that:

> "The constitution requires that any fact that increases the penalty for a crime . . . other than the fact of a prior conviction, must be submitted to a jury and proven beyond a reasonable doubt."

In Apprendi, the defendant fired several shots into the home of an African American family and made a statement (which he laterretracted), that he did not want the family in the neighborhood because of their race. Id.

Apprendi was charged under New Jersey law with, inter alia, second degree possession of a firearm for an unlawful purpose, which carried a maximum prison term of ten (10) years.

The Court did not refer to New Jersey's "Hate Crime" statute, which provided for an enhanced sentence if a trial judge found, by a preponderance of the evidence, that the defendant committed the crime with a purpose to intimidate a person, or group, because of, inter alia, race.

After Apprendi plead guilty, the state of New Jersey (which specifically reserved the right to request the state court judge to imposed a higher sentence based on the belief that the offense was committed with a biased purpose), sought sentencing under the "hate crime" statute - which carried a statutory maximum prison term of twenty (20) years.

-23-

The state court, in fact, found (by a preponderance of the evidence) that the shooting was racially motivated and sentenced Apprendi defendant to a twelve (12) year term of imprisonment on the firearm count.

In upholding the sentence, the New Jersey Court of Appeals rejected Apprendi petitioner's claim that the due process clause required that a biased finding be proven to a jury beyond a reasonable doubt.

And, although the State Supreme Court affirmed, the U.S. Supreme Court agreed with Apprendi petitioner.

The question presented to the Court was:

> ". . . [w]hether the Due Process Clause of the
> Fourteenth Amendment requires that a factual
> determination authorizing the increase in the
> maximum prison term for an offense . . . be
> made by a jury on the bases of proof beyond a
> reasonable doubt."

In holding that it does, the Court held its decision to state a new principle of constitutional law:

> "The Fourteenth Amendment right to due process
> and the Sixth Amendment right to trial by jury,
> taken togethert, entitle a criminal defendant
> to a jury determination that he is guilty of
> every element of the crime with which he is
> charged, beyond a reasonable doubt."
> [citing In Re Winship, 397 U.S. 358, 364]

The Court went on to explain:

> "The historic foundation for these principles extends
> down centuries into the common law.  While judges in
> this country have long exercised discretion in
> sentencing, such discretion is bound by the range of
> sentencing options prescribed by the legislature.
> The historic inseparaability of verdict and judgment
> and the consistent limitations on judges discretion
> highlight the novelty of a scheme that removes the
> jury from the determination of a fact that exposes
> a defendant to a penalty exceeding the maximum he
> could receive if punished according to the facts
> reflected in the jury verdict alone.  In light of the
> constitutional rule expressed here, New Jersey's
> practice cannot stand."   Apprendi, supra.

-24-

The Court went on to explain:

> "The historic foundation for these principles
> extends down centuries into the common law.
> While judges in this country have long exercised
> discretion in sentencing, such discretion is
> bound by the range of sentencing options
> prescribed by the legislature.
> The historic inseparability of verdict and judgment
> and the consistent limitations on judges discretion
> highlight the novelty of a scheme that removes
> the jury from the determination of a fact that
> exposes a defendant to a penalty exceeding the
> maximum he could receive if punished according to
> the facts reflected in the jury verdict alone.
> In light of the constitutional rule expressed here,
> New Jersey's practice cannot stand."  Apprendi, supra.

According to the Court, the question of whether Apprendi had a constitutional

right to have a jury find such bias, in that case, was 'starkly presented' and

had actually been foreshadowed by the court's earlier decision in Jones, supra:

> "We noted there [in Jones, supra] that "under the Due
> Process Clause of the Fifth Amendment and the Notice
> and Jury Trial guarantees of the Sixth Amendment,
> any fact (other than the fact of a prior conviction)
> that increases the maximum penalty for a crime, must
> be charged in an indictment, submitted to the jury,
> and proven beyond a reasonable doubt."  The Fourteenth
> Amendment commands the same answer . . .  involving
> a state statute."  Apprendi, supra, citing Jones v.
> United States, 526 U.S. 227 (1999).

In the end, the Court held that Apprendi petitioner's sentence was unconstitutional:

> "The New Jersey procedure challenged in this case
> is an unacceptable departure from the Jury Tradition
> that is indispensable in our Criminal Justice System."
> Apprendi, supra.

Based on the above ruling, in the context of drug convictions under Title 21

United States Code, Section 841 and 846, the Seventh Circuit Court of Appeals has

held that unless the prerequisite amount of controlled substance needed is charged

in a **FEDERAL DEFENDANT'S INDICTMENT, SUBMITTED TO THE JURY, AND PROVEN BEYOND A**

**REASONABLE DOUBT,** neither sections (b)(1)(B) nor (b)(1)(A) can be utilized to

sentence a defendant without violation the constitution.

-25-

Proof of this is found in the case of United States v. Nance, App.No.

00-1836 (7th Cir. 2000), where the Court overruled prior caselaw which held

that drug quantity was not an element of the federal drug laws.

In Nance, supra, the Court explained that:

> "We are not the first circuit to consider the
> question whether defendants may be subjected
> to an enhanced sentence based on drug type
> and quantity, as provided in [21 U.S.C.S.]
> 841(b), without charging and proving those
> facts.
> More importantly, our sister circuits have thus
> far unanimously concluded that Apprendi means
> that they may not.  See  United States v. Rogers,
> 228 F.3d 1318, 1326-28 (11th Cir. 2000); United
> States v. Doggett, 230 F.3d 160 (5th Cir. 2000);
> United States v. Angle, 230 F.3d 113 (4th Cir.
> 2000); United States v. Nordby, 225 F.3d 1053
> (9th Cir. 2000); United States v. Rebman,
> 226 F.3d 521, 524 (6th Cir. 2000); United States
> v. Aguayo-Delgado, 220 F.3d 926, 931 (8th Cir.
> 2000).  Furthermore, we note that the Supreme Court
> vacated this Court's decision in United States v.
> whitt, 211 F.2d 1022 (7th Cir. 2000), in which we
> rejected the defendant's argument that the  amount
> of drug for which he was to be held responsible
> was a matter for the jury . . . The Court's order
> directed us to reconsider whit, which had relied
> on our earlier decision in Jackson (United States
> v. Jackson, 207 F.3d 910 (7th Cir. 2000), in light
> of Apprendi." Nance, at 5.

Eventually, the Seventh Circuit agreed with its 'sister circuits' and

followed the principle/rule set forth in Apprendi, that any fact that increases

the penalty for an offense (including a drug offense) above that authorized by

statute, must be charged, submitted to a jury, and proven beyond a reasonable

doubt:

> "We agree with our sister circuits that Apprendi
> indeed requires us to overrule that part of our
> Jackson decision that concluded that drug quantities
> under [21 U.S.C.], Section 841(b) are always a
> sentencing factor." Id.

-26-

## **Conclusion**

The Petitioner believes he has demonstrated a violation of his Fifth and Sixth Amendment rights to the U.S. Constitution and moves this Court for an order granting the § 2255 motion by vacating the current sentence imposed (262 months) resentencing Petitioner Sammie Simpson, pursuant to Title 21 U.S.C.S. § 841(b)(1)(C), which mandates a mandatory maximum sentence of no more than 20 years imprisonment.

-28-

Although the Seventh Circuit limited its holding in Nance to the statutory maximum found under 21 U.S.C. § 841(b)(1)(C), when no amount is charged in the indictment, submitted to the jury, or proven beyond a reasonable doubt, which is twenty (20) years imprisonment, as of 1987, a district court's discretion to sentence a defendant anywhere within a statutory maximum has been severely hampered in light of the promulgation of the U.S. Sentencing Guidelines which were revealed in United States v. Booker,.

However, for purposes of the instant ground, Petitioner is concerned only with the statutory maximum available concerning Count One as a Fifth and Sixth Amendment error surely occurred when the district court adopted the findings of the PSR/probation officer, without specifically making an independent finding itself both verbally and in writing on the record.

The district court found by a preponderance of the evidence, at sentencing, that Petitioner stood convicted of an offense listed 21 U.S.C. §841(b)(1)(A) although the requisite amounts alleged **50 grams** and **1 kilogram of Cocaine Base (Crack)** and **Herion** were never listed in the actual indictment itself, only in the overt acts.

Moreover, one would only need to review the many drug amounts listed in the PSR to discover most were never testified to at trial. In fact, they were so numerously listed in the PSR that, it would take a complete listing of all drug amounts testified to at trial by the government witness' to show exactly what the Petitioner is saying.

Hence, to do so would require more time and paperwork attached to this petition and tie up the Court's hand therefore, the Petitioner would ask the Court to have one of its clerk's to compare the PSR drug amounts with the actual drug amounts testified to at trial to test the Petitioner's accuracy.

-27-

...

**E.    Ground Five**

    1.      Government Response

The petitioner claims that the indictment did not charge and the jury did not find a threshold drug quantity in violation of Blakely v. Washington. (2) A review of the indictment shows that it alleged that the conspiracy "involved more than one kilo of heroin" and "involved more than 50 grams of cocaine base(crack)" (R.27,p.3) The petitioner's assertion concerning the indictment is incorrect. (3) Likewise, a review of the verdict forms shows that the jury did determine the quantities of cocaine base (crack) and heroin beyond a reasonable doubt. (4) The jury verdict found that the conspiracy involved" 1 Kilogram or more of heroin" and 50 grams or more of cocaine base(crack)". (R.81) The petitioner's assertion concerning the jury verdict is incorrect. (5) The petitioner's argument that his sentence violates Blakely is meritless. Blakely does not have retroactive application to § 2255 motions. Simpson v. United States, 376 F. 3d 697 (7th Cir. 2004).

    2.      Petitioner Reply

Many of the Government's responses do not fully address petitioner's claims. for those that do, we make no comment, and for those requiring a more supererogated reply, we preceed as follows:

## Argument

Petitioner filed this action with the aide of inmate law library clerk assisting him with the use of legal research reference material. Petitioner is a lay person unable to articulate his claims sufficiently to state the precise claim.

Petitioner should not be held to the standard of an attorney at law and the court should construe his claim liberally and with tolerance. In **Haines v. Kerner,** 404 U.S. 519, 30 L.Ed 2d 652,92 S. Ct.594 The Supreme Court opined, (hold allegations if a pro se complaint to less stringent standard than formal pleading drafted by lawyers) the court should allow petitioner to state a more concise claims throughout this reply.

To deny petitioner refurbish claim would deny him access to the court by holding petitioner to a standard of a licensed attorney.

The indictment in its three counts fails to set forth properly and with the requisite definiteness and particularity all the essential elements of the crimes attempted to be charged a drug type or quantity alleged to have been distributed

That drug types and quantity are necessary and essential element of the charged offense: however, there is no drug type or quantity in Count I or Count II of the indictment, but merely a blanket charge of a general and vague cicition of the statutes. The failure to specify the type and quantity amount to violation of the Defendant's right to due process of the law as guaranteed by the Fifth Amendment to the United states constitution which provides that the accused shall have the right to be informed of the nature of the accusation made against him.

The Fifth Amendment and Sixth Amendment of the United States Constitution Guarantee's in Relevant parts:

-30-

> No person shall be held to answer for a capital,
> or otherwise infamous crime, unless on presentment
> or indictment of a Grand Jury. . . . Art v. U.S.C.
> and to be informed of the nature and cause of the
> accusation. Act II. U.S.C.

These pronouncements are the foundation upon which Rule 7 (c)(1), of the Fed. A. Criminal P. demand in all criminal prosecution, the accused must be informed of the nature and cause of the accusations against him. The defendant was charged in an Superceding Indictment with conspiracy, to distribute heroin, a Schedule I controlled substance, and distribution of cocaine base (crack) in violation of 21 U.S.C. §846 and 841(b)(1)(A).

The overt acts are surplusage, and are neither essential to nor constitues elements of the offense or statute under which defendant was charged. Count one of the indictment does not serve to inform the defendant of the nature of all essential elements constitutional required by law.

Moreover, overt acts cannot substitute the requisite language necessary to be charged in each count of the indictment. That since the indictment is substantual defected that it cannot support the conviction of defendant.

Counsel's performance fell below an objective standard of reasonableness for failure to challenge the deficiency of the indictment upon which defendant was convicted.

That counsel failure to move to dismiss the indictment and to allow defendant to proceed to trial know the indictment was defected violated defendant's rights under Fifth and Sixth Amendment to the United States Constitution.

-31-

The indictment failed to put petitioner on adequte notice of the drug type and quantity for which he was charged. No amount of drugs was charged in charging body of the indictment and petitioner was not able to adequately prepare to defend against mere citation of the statutes. The defective indictment deprived petitioner of substantial right to be informed of the nature and cause of the accusations against him which prevented petitioner from, seeking expert examination and determination whether the substance was, in fact, cocaine base for which the indictment gave no notice of prior to his conviction.

The deprivation of petitioner's Sixth Amendment rights as announceed in **Apprendi** and **Jones**. Clearly establishes error, of such and kind that deprives petitioner of any fundamental part of the jury trial guarantee is plain. Because the indictment failed to charge a drug quantity; petitioner was unable to defend against the indictment is insufficient because it fails to state a material element of the offense **United States v. Locklear,** 97 F. 3d 196, 198-99(7th Cir. 1996)(The Sixth Amendment guarantee of notice sufficient to prepare a defense and invoke the double jeopardy clause when appropriate in a fundamental protection without compromise.)

In the case at bar there was no 'quantity' listed in the indictment that could actually specify what amount of imprisonment the defendant would be exposed to. The petitioner was not put on "proper notice" as the Supreme Court in Neder directed. As such, the petitioner was deprived his Fifth Amendment Rights to Due Process and his rights to Notice and Jury Trial Guarantees under the Sixth Amendment as a result of this omission. Accordingly, the indictment is defective and must be vacated.

-32-

Petitioner refers this Court to the Fifth Circuit holding that the failure of the indictment to charge each and every essential element of an offense is a serious constitutional violation. **United States v. Cabrera-Terran,** 168 F. 3d 141,143 (5th Cir. 1999). Further, in **United States v. Morales-Rosales,** 838 F. 2d 1359, 1361-62 (5th Cir. 1988). holding that "the failure of an information (Indictment) to charge an offense is a jurisdictional defect that is not waived by a guilty plea".

The instant case was the result of a guilty plea, and the Grand Jury Indictment is 'defective' as a result thereof. Moreover, since the Grand Jury Indictment failed to place the defendant on 'proper notice' the trial court was deprived of its jurisdiction to impose the sentence herein, and accept the guilty plea.

### Conclusion

As demonstrated above, The petitioner's due process right under the 5th Amendment were violated when he became subjected to a trial by jury based on a Fedral indictment which failed to list a drug quantity amount which would have placed petitioner on notice of all essential elements of the indictment.

With that in mind, the petitioner would also move the Court to further consider the factsthat his Sixth  Amendment Rights were violated when the district court failed to provide the petitioner with a fair and adequate trial by jury and effective assistance of counsel  when defense counsel failed to move for dismissal of the indictment during the Pre-Trial Stages of the case under Rule 6 and 7 et.seq.

-33-

Cause is shown by both Constitutional Violations and Counsel's failure to move for dismissal prior to trial.

Prejudice is demonstrated by the amount of actual time petitioner received at his sentencing hearing. (262-327 months) See **Glover v. U,S.** 531 U.S. 198 (2001).

Sammie Simpson #20507-424

-34-

**GOVERNMENT'S Response:**       **Ground Six:** The petitioner claims
that the district court erred when it enhance petitioner's sentence
for his role in the offense. In this argument. the petitioner
quarrels with the district court's determination that he was an
organizer or leader of the conspiracy. The petitioner is once again
trying to raise an issue which is not cognizable in a § 2255 motion.
Collateral attacks on the implementation of the Unitd States sentencing
Guidelines are not generally permitted. Scott, 997 F. 2d at 341-43;
153 F. 3d at 443 . . .

**Petitioner Reply:** First of all, the petitioner has continued
to claim ineffective assistance or counsel on behalf of his defense
counsel throughout just about every stage of the proceeding. See
**(Exhibit A).**

AS will be shown, despite the petitioner's repeated attemps to
convince his defense counsel to object and demonstrate through various
excerpts from the trial transcript's exactly what each with witness
stated under oath, he would not listen to the petitioner. See **Docket**
at 93, 09/23/02.

The petitioner Sammie simpson, did not influence any members
of the alleged conspiracy. The government never proved that the
petitioner was a leader or organizer of any one involved.

Furthermore, there is no evidence that the petitioner acted
as a leader or organizer of anyone involved.

Every witness that took the stand to testify stated they purchased
drugs from who ever they could. The government facts do not support
a showing that the petitioner had control over **Levence Simpson,
Jerry McGinnis, Haywood Robinson, Burke Meanus, Nikki Witby, Eddie
Jackson, Heather Wise, Daniel Parker, R. Grayson, Ella Donaldson,A/K/A**
**(Reese).**

The record show that brent brown testified that later in
he was basically dealing drugs. (T. 187-90)  Levence Simpson in
the cocaine business in 1997. He also stated once he got Levence
started, and that Levence was doing his own thing. (T. 190-193).

Mr. Brown further testified that Westside (the petitioner)
would bring cocaine to Peoria, but it died down because it was not
selling as well as heroin. (T. 193-197). Mr. Brown claims he saw
Jerry McGinnis (Doc) selling cocaine at various places, including
the  Budget Motel. Mr. Brown also saw Doc sell to Heather Wise.
(T. 205-208).

Mr. Brown, then admitted he was a member of the Ganster Disciples
street gang and sold drugs with them. Mr. Brown testified he supplied
cocaine to Levence Simpson to set him up selling. (T. 209-216).

The record as shown above should reflect that the petitioner
did not exercise any control over Brent Brown, or Levence Simpson.

Moreover, the record as presented, further demonstrate that
the government can not link Sammie Simpson, phone records to Levence,
Brent Brown, Burke Meanus, Eddie Jackson, Heather Wise, Nikki Withby,
Daniel Parker. (the petitioner). (T. 289-90).

Mr. Jackson traveled to Chicago, Illinois on his own and did
not purchase drugs from the petitioner Sammie simpson.

The petitioner Sammie simpson, did not exercise control over
Mr. Jackson. The testimony at trial show that other individuals in
the conspiracy were involved in transporting and selling herion and
cocaine independent of petitioner in Peoria Illionis, Haywood
Robinson testified he sold drugs to Tony on the North side of
Chicago, (T. 39). and he took Levence Simpson to the North side
to purchase heroin from Tony. (T. 47)

-36-

Petitioner filed this action with the aide of the inmate
law library clerk assisting him with the use of legal research
reference material. Petitioner is a lay person unable to articulate
his claims sufficiently to state the percise claim. Petitioner
sufficiently to states the percise claim. Petitioner should not
be held to the standard of an Attorney at law and  the court should
construe his claim liberally and with tolerance. In **Haines v. Kerner**,
404 U.S. 519, 30 L. Ed 2d 652,92 S. Ct. 594 the Supreme Court
Opined, (holds allegations of a pro se complaint to less stringent
standard than formal pleading drafted by lawyers) the court should
allow petitioner to state a more concise claims throughout this
reply. To deny petitioner refurbish claim would deny him access
to the court by holding petitioner to a standard of a licensed
attorney.

Counsel was ineffective for failing to argue the role in the
offense enhancement. This is not a new claim. Petitioner's pro se
letters received by the court on or about 9/23/02 urged the court
to take juricial notice of counsels deficient performance Docket
at 93  09/24/02 .

Petitioner repeatedly asked counsel to address the issue of
leadership role attributed to him in the Presentence Investigation
Report, but counsel's failed to argue the petitioner's position as
to the propose enhance, violated petitioner due process protection
**Strickland v. Washington**, 466 U.S. 668, 80 L.  d 2d 674, 104 S. Ct.
2052 (1984) See **Lockhart v. Fretwell**, 506 U.S. 364 122, L. Ed 2d
113 S. Ct. 838 (1995).

-37-

Counsel was ineffective for failing to argue the role in the offense enhancement for being a leader, organizer, resulting in a 2 level increase in the petitioner Sammie Simpson offense level. Where there was no evidence to support the enhenced sentence which severely prejudice petitioner See **United States v. Andreas**, 216 F. 2d 645 680 (7th Cir. 2000) held that to access the enhancement, the court must find that petitioner organized a criminal activity involving five or more oarticipants other than himself). The lack of evidence and testimony at trial can not support the 2 level enhancement, and counsel performance fell below an objective standard of reasonableness for failure to argue the 2 level enhancement increase in the sentence. Although petitioner offense level was level 36, and his  sentence was 262 months, absent the 2 level enhancement, had counsel objected, petitioner's resulting offense level would have been level 34, and the sentencing range would have been 168-210 months. Had the court  sentence petitioner to the top of the guideline range absent the role in offense, the resulting sentence would be 210 months, 52 months longer than the sentence the court had to impose in light of the mandatory sentencing structure in place at the time of sentencing. Had the court sentence petitioner to the low end of the guidelines range, which the court did, the resulting sentence would have been 168 months, more than 94 months longer, Counsel's failure to argue the increase penalty violated his Sixth Amendment right to effective assistance of counsel and his due process right to be sentence on the basis of reliable and accurate information.

-38-

Counsel's deficient performance violated petitioner's fifth
Amendment right to due process and Sixth Amendment right to effective
assistance of counsel. and had it not been for counsel's deficient
performance the outcome at sentencing would have been different.
Therefore, in light of the foregoing factual claim this court should
vacate, and set aside the sentence and remand for resentencing.

-39-

G.    **GROUND  Seven**

1.    Government's Response

The Government's response to petitioner's claims is does not adequately and concisely address the issue raised. The Government response as follows:

(1)    The petitioner claims that his attorney was ineffective for failing to object to drug quantities that were not found by the Jury.   (2)    His true claim is that the jury did not find drug amounts beyound a reasonable doubt. (3)    A closer inspection   of the verdict forms show that the jury did determine the quantities of cocaine base (crack) and heroin beyond a reasonable doubt. (4)    The petitioner's claim that the jury did not make such finding is simply false. (5)    His claim that his counsel did not object is also false. (6)    A review of the presentence report shows that the petitioner's attorney did object to the calculation of drug quantities in the report.  (R.99).  (7)    The district court heard and considered the objections to ¶¶36 and 41 of the presentence report. (8)    The district court resolved those objections to the drug weight, finding a base offense level of 36 (R.99).   (9)    The objection by his counsel was denied.

2.    Petitioner's Reply

Many if not all of the Government responses to petitioner's petition are not accurate interpretations of petitioner's claims; therefore, in order for the Court and the Government to have a clear understanding of petitioner's claims the follow supererogation of the petitioner's claims is as follows:

-40-

3. Summary of the issue and points of Authority

Petitioner contents counsel's performance fell below an objective standard of reasonableness for failing to object to and challenge the enhance penalty for (crack), as well as object to that the government failure to meet its burden of proving that the substance distributed was the correct cocaine base·form of crack and wether the distinction was meaningful for purposes of the enhenced penalties for cocaine base offenses under 21 U.S.C. § 841(b).

Counsel was ineffective for failing to argue that the correct identity of the form of cocaine base is critical to the sentencing determination. The Sentencing Guidelines prescribe a sentence for cocaine base squarely within the guidelines range for the quantity of substance possesed or distributed whereby, the form of cocaine base decribe as "crack" under the Sentencing Guidelines prescribes a mandatory 100:1 ratio for aggregated drug amount in the offense. As a result, counsel's failure to object to the Government's failure to meet its burden of proving that the form of cocaine base attributed to petitioner is the form described under 2D1(c)(D) of the Sentencing Guidelines exposed petitioner's to an enhanced sentence far greater than that prescribe for cocaine.

4. Argument

Counsel failure to argue that the Government did not prove that the cocaine attributed to petitioner was the correct form of cocaine base (crack) described in 2D1.1(c)(D) of the Sentencing Guidelines for purpose of the enhanced sentence.

-41-

Petitioner subsequently was sentence based upon a jury finding of cocaine base (crack) a form of cocaine the government did not meet its burden of proving.

Had counsel performance not been deficient, he would, have objected to the Government's attributing the crack form of cocaine base to the petitioner and conspiracy.

The substantial increase in petitioner sentence directly resulted from the 100/1 ratio of cocaine base (crack) oppose to cocaine hydrocholride not objected to by counsel and was severely prejudicial **United States v Granadas,** 168 F. 3d 343,346.(8th Cir 1999); United States v. Edwards, No. 03-4234 (7th Cir. 2005).

As a results of counsel's ineffectiveness the following incorrect sentence was imposed and petitioner is guity of, and cannot be punished for the offense described in Section 841 (b) (1)(A), The maximum sentence the court could have  imposed in this case, on basis of the jury verdict of 50 grams or  more of cocaine base and 1 Kilogram or  more of heroin had he made no finding concerning quanity of drugs or leader organizer would have been 120 months, given the petitioner's base offense level when the petitioner possesed at leats 50 grams but less than 150 grams of crack, and the petitioner's criminal history catagory II U.S.S.G. see, 4A1.1(a), 2(c)1. Without any enhancements as indicted above, the level 32 is also applicable of a petitioner who possess at leats 1 Kilogram but less than 3 Kilograms of heroin. In the absence of an allegation of an aggravating drug quantity, petitioner is guilty of, and can only be punished for the lowest grade of controlled substance (Schedule II narcotic) trafficking offense as found under Section 841(b)(1)(D), a maximum term of five years,

-42-

Under the Sentencing Duidelines § 2D1.1(c) in effect at the time of sentencing, petitioner's guideline range would have been the lowest level in "Zone D" of the guidelines table to level 12, with a criminal history category of II, and the petitioner's sentence would be 12-18 months. Given only if the petitioner had been held responsible for the drugs charge in the orginal indictment would his sentencing guidelines range would still be level 32 and the criminal history category II, for a sentence Of 46-57 months.

At sentencing the Government argued that the petitioner should be held responsible for the death of William Gilmore for purpose of sentencing, and petitioner should be sentence under § 841(b)(1)(A), which provides a mandatory minimum sentence 02 years to life if the offense of conviction establish that death or serious bodily injury resulted from the use of the substance. The court rejected the Government's position and did not attribute the death of Mr. Gilmore to petitioner at sentencing for purpose of the enhance sentence.

The Government and the Probation Officer mislead the court by asserting that the mandatory minimum sentence was 20 years regardless of the enhancement for the death, and that the sentence range remained at level 38.

This was completely false. The level 38 could have only been imposed if the court would have found petitioner responsible for the death of William Gilmore. The Sentencing Guidelines § 2D1.1(c) prescribes level 32 for the precise drug amounts, criminal history category II.

-43-

In Nichols v. U.S, 75 F. 3d 1137 (7th Cir. 1996) the Seventh circuit court of Appeals, held that the trial counsel's failure to object or argue the amount of drugs attributed to the defendant based on calculation of the sentencing guidelines, amounted to ineffective Assistance of counsel where only witness' testimony gave wide range of amounts and the court failed to make any finding of credibility of said witness' testimony.

During the case in chief, the only actual drugs submitted to either the grand or petit jurors were only 3,5 grams, cocaine base and 2.7 grams of heroin everything else was based upon witness' testimony "only".

Petitioner have unequivocally demonstrated his Sixth Amendment right to effective assistance of counsel failure to object to the enhance penalty for cocaine base not proven by the Government, and the incorrect sentence that resulted there from. Granadas 168 F. 3d at 346.

After duly consideration, petitioner further move the court to consider facts relevant to petitioner right to due process at sentencing, where the court failed to make a specific finding which resulted in an incorrected sentence.

Cause is shown by the Fifth Amendment and Sixth Amendment violation of counsel's failure to object to the type of cocaine, and protect petitioner's right to be sentence on accurate information. United States v. Edward, 111 F. S. 2d 1057 (E.D.Wis.2000) Indictment must charge fully and clearly each element of the crime charged. Indictment that failed to allege reference to interstate commerce, did not fully and clearly charge an effect on interstate commerce, which is an essential element of 18 U.S.C.

-44-

## H.    GROUND EIGHT

### 1.    Government Response

The Government asserts that the petitioner claims that the testimony by government witnesses that they had experience investigating gangs was prejudicial to his case. (2) In this claim, the government allege the petitioner again quarrels with the admission of evidence that he concedes was not intended to connect him with gang activities. (3) The import of the testimony was to establish either the expertise of a witness (R.144,p.389) or the employment position held by the witness at the time of his trial testimony. (R.144,p.354) (4) None of this evidence linked or attempted to link the petitioner to gang-related activity. (4) It was intended to bear on the credibility of the individual witness, which was an issue in the case. (5) The petitioner can demonstrate neither error nor prejudice concerning the admission of the evidence. (5) The government also assert that petitioner claim is another example of a non-constitutional issue(admission of evidence) that was not raised and, therefore waived, on direct appeal. (6) The government asserts that the petitioner cannot raise it in his §2255 motion without the meritless allegation that his attorney was ineffective.

### 2.    Petitioner Reply

The government's blanket response does nothing to overcome the claim asserted by the petitioner. The erroneous admission of highly prejudicial and inflamatory evidence, which has no relevancy to the charged offenses, violates Due Process, and counsel's failure to object to "highly prejudicial remarks" deprives the defendant of a fair trial and establishes ineffective assistance of counsel. see United States

v. Wolf, 787 F 2d 1094 (7 Cir 1986); Clark v. Duckworth, 906 F 2d 1174
(7 Cir 1990); and Seehan v. Iowa, 37 F 3d 389 (1 Cir 1996). The only
purpose in having the officers's testify to their prior GANG related
training and investigation was simply to inlfame the jury against the
petitioner and unlawfully "infer" that the petitioner and other alleged
members of the conspiracy were "Gang-Bangers" and violent felons who
deserved to be punished whether they were engaged in a drug conspiracy
or not.   The admission of inflamatory and prejudicial evidence, which
has no bearing on relevancy at trial, and it  v iolates Due Process.
In United States v. Thomas, 321 F 3d 627 (7 Cir 2003), the court held
that it was reversible error, requiring a new trial, where the court
admitted evidence of a photograph depicting defendant's tattoos of rev-
olvers and prior weapons conviction where there was no "direct evidence"
establishing the defendant was anything more than in "mere presence"
of where a firearm was discovered. Likewise, in the instant matter,
nothing about the charged case or evidence established any "gang-related
ties" or that the petitioner was a "gang-banger." However, the government's
intentional admission and direct examination of every law enforcement
officer's testimony related to GANG violence, investigation, etc., and
impermissibly allowed the jury to "infer" that the participants in the
alleged crimes were GANG members. Hence,  such an impermissible infer-
ence denies the petitioner his right to a fair trial and is
a constitutional violation as necessary under §2255 for relief. The
government's claims do not even come close to establishing that the
petitioner has not plead and proven a constitutional violation to the
right to a Fair Trial and effective Assistance of Counsel where counsel
failed to object or move in limine to exclude any "gang" related testimony
or references. In a similar vein, the Supreme Court in Old Chief v.
United States, 519 US 172 (1997) disavowed the introduction of highly

-46-

prejudicial evidence that was irrelevant to the prosecution in light
of the defendant's offer to stipulate. While the facts of Old Chief
are distinguishable, the law is the same: the admission of highly prej-
udicial evidence that is not relevant to any aspect of the case charged,
which merely serves to inflame the jury's passions to conviction on
grounds and evidence uncharged, violates the right to a Fair Trial and
Due Process.

In closing, the petitioner asserts that he has brought a constitut-
ional claim, the government has failed to rebut his claim or cite even
a single case, and the facts and law plead herein establish that the
admission of the "gang" related testimony from law enforcement was prej-
udicial error which requires the vacatur of the conviction and the grant
of a new trial, as well as counsel's ineffective assistance in failing
to object to the admission of the highly prejudicial and non-relevant
"gang" testimony. Had counsel objected and the "gang" testimony not
been admitted on the multiple occasions that it was, the outcome of
trial would have been substantially different and the petitioner would
have likely gotten an acquittal due to the lack of direct evidence invol-
ving him in the conspiracy.

WHEREFORE, for all of these reasons, this court should find that
the admission of the "gang" evidence was prejudicial error, grant the
new trial as requested, and also find counsel was ineffective when failing
to object to the admission of the evidence at trial or raise the claim
on direct appeal.

## A.   Ground Nine

### 1.   Government's Response

The Government asserts the following: (1) The petitioner claims that the trial testimony of Haywood Robinson was not credible and the district court erred by allowing him to testify. In this claim, the petitioner does little more than quarrel with the weight given to the trial testimony of Robinson. (2) Although far from glamorous, the testimony of Robinson painted an accurate picture of many years of drug abuse and addiction. (3) As a member of the conspiracy, Robinson's testimony was important. (4) When he described the baggage that he carried from his involvement with drugs, Robinson was discrediting his own story. (5) The petitioner was not prejudiced by the fact that Robinson discredited his own testimony.

The claim is another example of a non-constitutional issue that was not raised and therefore, waived, on direct appeal. The petitioner cannot raise it in his § 2255 motion.

### 2.   Petitioner Reply

The trial court error when allowing Mr. Robinson to testify knowing Mr. Robinson questionable mental health and manic depression ailments raised substantial question of competancy and undermind the integrity severely prejudice the defendant.

A summary of Robinson's testimony in relevant citation to the record is as follows:

-48-

Mr. Robinson testified, in addition to his mental health problems, that he was a co-defendant of the three who went to trial. He further testified to his extensive prison background.

The record show Robinson testified being the leader of the allege conspiracy. (t.36-43) Robinson indicated he have used heroin every day since age 15 and since age 9. (Tr.72*16-17 and marijuana and cough syrup. (Tr.72,*11) to quest the voices(Tr. 72,*14 telling him to "Kill,Kill,Kill," and not be depressed. He testified he had been abused when he was young and was hearing voices. He stated that he wanted to kill people. He said that he became paranoid at the age 11. He stated that he hates faggots, and people, and he hates himself and takes medication for depression everyday. He testified that he takes "manic depression and atidal to slow down from hearing voices.

The prosecutor asked how long Mr. Robinson had he used drugs 26 years on a daily basis Tr.72,*4, Tr.73,*11 Robinson answered, "Well, I was just hearing voices then. When I got age 11, that's when I got abuse and that was when the paranoid started. Tr.73,*12,14.

Mr. Robinson responses to both the prosecutor and defense counsel question were confusing and consistently inept, to the extent that the court had to allow leading question by the government, over countless objections by the defense, simply to maintain a measure of competently cognizance continuity to Robinson incredulous testimony.

-49-

Mr. Robinson was the linchpin of the Government's case-in-chief, his testimony establish the foundation for the introduction of testimony linking petitioner and McGinnis Tr.49,*16-20, known as (Doc.) Tr.49.*25 to Count I and Count II of the Government's case, Without Mr. Robinson's testimony the government chain of evidence would have crumble. And the government could not have link petitioner to the on-going drug conspiracy in Peoria already under investigation before petitioner was known to any authorities.

On cross-examination, the Court prevented defense counsels further inquiry into Mr. Robinson's mental states, this restraint critically impaired the defense's ability to establish the credibility and believability of Mr. Robinson's testimony to the jury. The impact of the Court's determent was overwhelmingly prejudicial, since Mr. Robinson's testimony was the cornerstone of the conspiracy charged in Count I. of the indictment, and went to establish petitioner's link to the Peoria conspiracy with Levence Simpson Tr.40,*13-14. Clearly, throughout the examinations of Mr. Robinson, his testimony moved from incredulous to bazar, and at all times clearly unstable.

Neither the Court nor the Government informed the defense of Robinson's condition or that Robinson had been prescribed Atival, a psychotropic medication that is used in the treatment of schizophrenia and manic associated with bipolar disorder, AstraZeneca Pharmaceuticals LP, See Atival web site under Seraquel, available at WWW.Atival.com., neither the Court or the Government appraised the defense what affect the medication would have on Mr. Robinson competency to testify cheherently at trial.

-50-

Of all the witnesses that testied for the government none could have link petitioner to the Peoria conspiracy but Mr. Robinson. Had the jury determine the mental instability and his propensity to distort reality. Robinson's credibility would have likely prompt the jury to acquit the petitioner of conspiracy. Clearly petitioner was prejudice, and unquestionably petitioner's substantial constitutional right to a fair and impartial jury verdict was denied. The court error in restricting defense inquiy into the credibility of a material witness essential to the jury determination.

## Argument.

The trial court's decision to restrict defense counsels examination of a witness, and restricting counsel's ability to put the question of the credibility is error. **United States**, **v. Olano,** 507 U.S. 725, 123 L. Ed 2d 508, 113 S. Ct. 1770(1993) the Supreme Court held,(failure to submit materiality to the jury constituted error that was clear or obvious). In the instant case, the court, by restricting the defense query of the witness, deprive the jury of its "sole" right to decide the credibility of the witness.

Protection under Fifth Amendment and Sixth Amendment of the U.S. Constitution. See **United States v. Gaudin,** 515 U.S. 506 U.S. S. Ct 2310 132 L. Ed 2d 444(1995)(The court held that Fifth and Sixth Amendment require that all elements of the crime be submitted to the jury). More poitedly, petitioner argues that the credibility question is material; that the credibilty is lelf up to the jury determination.

-51-

### Conclusion

The petitioner's position has been stated herein and he shall Reply upon the Court's determination as to whether or not the Respondent violated his rights to a fair trial and impartial trial by jury when the government attorney was allowed to take Haywood Robinson down a path of prejudice which may or may not have negatively affected the jury verdict  in this case.

The Respondent knew or should have known, that Haywood Robinson was not mentally qualified to testify against or on behalf of anyone.

This court should Reverse the jury verdict and order a new trial or in the alternative, Schedule this matter for an evidentiary hearing to better establish the record inthis case.

## J.   GROUND TEN

### 1.   Government Response

The government asserts that the petitioner claims that his sentence was improper because the jury returned only a general guilty verdict without finding a threshold drug quantity. (2) The government also alleged that this contention is false. (3) The government states that the jury found that the  conspiracy involved  " 1 Kilogram or more of heroin" and "50 grams or more of cocaine base (crack)" . (R.81) (4) The threshold finding was made by the jury beyond a reasonable doubt, (5) Petitioner's argument to the contrary is simple wrong.

### 2.   Petitioner Reply

The government argues that the jury verdict made findings as to the required "threshhold findings" to impose a sentence in excess of twenty years, specifically noting that the jury found in excess of one (1) Kilogram of Heroin and in excess of fifty (50) grams of cocaine base (crack). However, the government misses the point.

First and foremost, the "threshhold quantities" were not **charged** in the indictment as required under the Fifth and Sixth Amendment. In Jones v. United States, 526 US 227, 243 fn. 6 (1999), the Supreme Court made the law clear when holding and **restating** this principle of law:

> ...under the Due Process Clause of the Fifth Amendment
> and the notice and jury trial guarantees of the Sixth
> Amendment, **any fact** (other than a prior conviction) **that**
> **increases the maximum penalty for a crime must be charged**
> **in an indictment**, submitted to a jury, and proven beyond
> a reasonable doubt.

This  restatement of law is very clear, and, notably, the decisions in Apprendi v. New Jersey, Blakely v. Washington, and United States v. Booker are also premised upon this law.

-53-

In taking this claim a step further, the law is well settled that "overt acts" are not **elements** of a conspiracy charged under 21 USC §841. see United States v. Pulido, 69 F 3d 192, 209 (7 Cir 1995), citing the Supreme Court from United States v. Shabani, 513 US 10 (1994), holding:

> In Shabani, the Court held that proof of an overt act is not required to establish a violation of the drug conspiracy statute.
>
> The Court held that the "plain language of the statute and settled interpretative principles reveal that proof of an overt act is not required to establish a violation of 21 USC §846.

see Pulido, 69 F 3d at 209. In applying this law, it is clear that the "overt acts" of a conspiracy under §846 are simply not elements of the offense.

In the instant matter, the body of the indictment in count I does not charge any "threshhold amounts" of heroin, cocaine, or cocaine base. Instead, these amounts were stated in a separate and distinct portion of the indictment severed from count I, Under Pulido and Shabani, the overt acts are not elements, and under Jones, the failure of the government to charge the threshhold facts in the body of count I renders the indictment defective, and substantively limited the sentencing court's authority to impose a sentence beyond the baseline maximum in §841(b)-(1)(C) of "not more than twenty years." As the Seventh Circuit has held on multiple occasions, the government must charge the "facts and events" it relies upon to seek an enhanced sentence under §841(b)(1)(A-C). see United States v. Brough, 243 F 3d 1078, 1080 (7 Cir 2001) and United States v. Bjorkman, 270 F 3d 482, 491 (7 Cir 2001)(citing Brough) and holding:

> Apprendi now strongly affects how §841 is implemented; as we concluded in Nance and [United States v.[ Westmoreland, [240 F 3d 618, 631-33 (7 Cir 20010] **a post-Apprendi indictment should specify, and the trier-of-fact must determine, not only the elements of the offense, which appear in §841(a), but also the events listed in §841(b) on which the prosecutor relies to establish the maximum sentence.**

This law is undisputable, and the facts of this case clearly establish that the government failed to charge the facts and events in count I which were necessary to establish the baseline maximum under §841(b)(1).

Furthermore, this is clearly a constitutional claim as the sentence of 262-months exceeds the statutory maximum under §841(b)(1)(C) and is an unconstitutional sentence under the Fifth and Sixth Amendment. This is exactly the type of claim that is contemplated under §2255, as well as an ineffective assistance of counsel claim for failing to object and raise this matter during trial, during the jury instruction conference, during sentencing, and on appeal. The petitioner was prejud-iced by the 22-months of extra sentence beyond the statutory maximum, which is sufficient to prove prejudice under Glover v. United States, 531 US 198 (2001).

WHEREFORE, for all of these reasons, this court should vacate the conviction and grant a new trial, or in the alternative, vacate the sentence and resentence the petitioner in accordance with the Fifth and Sixth Amendments, Apprendi, and 21 USC §841(b)(1)(C).

-55-

GROUND 11.

In its reponse, the government asserts that the admission of two
tape recordings was permissible and counsel was not ineffective when
failing to object. The government wholly misses the presented claim.

In his §2255 Motion, the petitioner asserted that the tapes were
admitted through the testimony of agent ZAMBECK and then the government
rested. No witnesses involved in the tapes were called or presented
for cross-examination. As asserted in the §2255 Motion, the Supreme
Court recently disavowed this practice in Crawford v. Washington, 541
US ___, 158 L Ed 2d 177 (2004), where the court held that the admission
of a taped confession of a non-testifying witness violated the Confront-
ation right under the Sixth Amendment. As asserted in the §2255 Motion,
the Sixth Amendment right stems all the way back from the history of
"the Roman Times." Not only did the petitioner proceed under Crawford,
but he also relied on Coy v. Iowa, 487 US 1012 (1988) and Lilly v.
Virginia, 527 US 116 (1999). **Nowhere in the government's Response to
Ground Eleven does the government counter this claim!**

The facts of this case are clear in regards to the two tapes. No
party to the conversations was presented for cross-examination when
the tapes were admitted. That, simply stated, is a Sixth Amendment denial
of Confrontation under Lilly and Crawford.

In United States v. Jones, 371 F 3d 363, 369 (7 Cir 2004), the
court reversed a conviction when holding that the defendant had not
had the opportunity to confront his accuser:

> Crawford holds that the "Sixth Amendment demands what
> the common law required:  unavailability and a prior
> opportunity for cross-examination." Id. at 1374. Crawford
> curtails the inquiry into the statement's reliability
> by holding that "the only indicium of reliability suffic-
> ient to satisfy constitutional demands is one the Const-
> itution actually prescribes: **confrontation**. Id. Jones
> never had an opportunity to cross-examine Rock and thus,
> under Crawford, no part of Rock's confession should have
> been allowed into evidence.

In this light, the petitioner never had an opportunity to cross-examine the tapes or the parties in the tapes due to the government's admission of the tapes with its last witness and then immediately resting its case. This was a calculated move to deny the petitioner cross-examination of the tapes and witnesses, all if violation of the Sixth Amendment.

In the same suit, the Seventh Circuit reversed and remanded for a new trial in United States v. Gilbert, 391 F 3d 882 (7 Cir 2004) in relying on Crawford's holding that the admission of the defendant's "estranged wife" was error when the wife was not called to testify, and the evidence against the defendant was not strong. Further, a number of district court opinions have "followed" Crawford's lead. see generally: United States v. Saner, 313 F Supp 2d 896 (S.D. Ind. 2004); Murillo v. Frank, 316 F Supp 2d 744, 748-49 (E.D. Wis. 2004).

The government's argument and defense is based solely upon the "objective proof" that the government's witnesses were "truthful" when claiming others were involved in the conspiracy. The government wholly fails to address the clearly CONSTITUTIONAL claim that the tapes were admitted in violation of the Sixth Amendment, Lilly, and Crawford.

Furthermore, this claim is not "another example of a non-constitutional issue (evidentiary ruling) that was not raised and, therefore waived, on appeal." This issue is clearly based within the Sixth Amendment of the Constitution, and is also solidly grounded in the Sixth Amendment right to Assistance of Counsel. In the §2255 Motion at Ground Eleven, the petitioner cites a bevy of jurisprudence for the longstanding conclusion of law that counsel was ineffective when failing to object to the admission of the tapes and secure the petitioner's confrontation rights at trial, which would have affected the outcome of the jury verdict and likely resulted in an acquittal, as well as the fact that counsel

-57-

failed to raise these claims on appeal. The government did not counter the petitioner's claims except for a "bare denial" stating "The petitioner cannot raise it [Ground 11] in his § 2255 motion **without the meritless allegation that his attorney was ineffective.**" (Government's Response page 9) This bare denial does not overcome the facts and law established in the §2255 motion, and the petitioner has established the substantive denial of his right to confrontation and assistance of counsel herein.

For all of these reasons, this court should grant the §2255 motion, vacate the conviction herein, and grant the petitioner a new trial.

———————

GROUND 12.

Next, the government asserts that counsel was not ineffective for failing to call an expert witness to rebut the claim that the cocaine base involved in the trial was "crack," and that cocaine base and crack are not synonymous.

Notably, the government argues that the petitioner has not shown what a purported expert witness would have testified to or how the witness could have changed the result of the case. Lastly, the government argues that the petitioner has not shown an expert witness was available of the import of the testimony.

In the §2255 motion at Ground Twelve, the petitioner asserted that failure to call an expert witness is ineffective assistance, citing from Rogers v. Israel, 746 F 2d 1288 (7 Cir 1984) and Miller v. Wain-wright, 798 F 2d 426 (11 Cir 1986). Likewise, as an indigent defendant, the petitioner reiterated that the Criminal Justice Act, 18 USC §3006A, provides funds for expert witnesses, and due to petitioner's incarceration and inability to find and contact and retain an expert witness for trial, that duty fell on counsel's shoulders under the Sixth Amendment.

Contrary to the government's bare denial of this claim, the law

is well settled that "cocaine base" and "crack" are not synonymous. In United States v. Edwards, 397 F 3d 570 (7 Cir 2005), the Seventh Circuit distinguished "crack" from cocaine base under the Guidelines and clearly stated "All crack is cocaine base **but not all cocaine base is crack.**" This simple statement of law clearly indicates that the issue of crack versus cocaine base is a significant claim. In fact, if the cocaine base in this matter was not "crack," as asserted by the petitioner, then his base offense level for 1.5 kilograms of cocaine base under USSG 2D1.1(c)(7) would have been 26, and the petitioner would have faced a guideline range of 70-87 months based upon his criminal history score of II. Under Edwards, as well as United States v. Booker, 70 F 3d 488, 494 (7 Cir 1995), the petitioner has a valid claim that cocaine base is not "crack" for purposes of the Guidelines, and counsel was ineffective when failing to secure an expert witness to rebut the evidence offered by the government.

In consideration of the foregoing, and the assertions in the §2255 motion, the governments unsupported bare denial, this court should grant §2255 relief and vacate the sentence imposed and permit the petitioner to challenge the "crack" findings at sentencing with a properly retained expert witness.

---

GROUND 13.

In its response, the government urges this court to believe that the petitioner claimed "refreshing recollection" with an agent's notes is permissible under FRE 612 and the claim fails. To the contrary, the claim presented is that the government failed to disclose the agent's notes in discovery, and that the notes were "substantially related to the guilt or innocence of the defendant...." Arguing that the agent's report, made from the notes, was "discovered," the notes were not dis-

-59-

coverable" and thus no error occurred. To the contrary, the "notes" were the direct result of the investigation, while the report was a "hearsay" record of agent GETZ's investigation. Disclosure of the report was made, while the notes were "secreted" until GETZ testified and used the notes to "refresh his recollection." FRE 612 specifically exempts the JENCKS Act, 18 USC §3500, from its requirement of disclosure after a witness has testified. see United States v. MeBust, 857 F Supp 609 (N.D. Ill. 1994); United States v. Alex, 791 F Supp 723 (N.D. Ill. 1992); and Clancy v. United States, 365 US 312 (1961). In United States v. Hilbrich, 341 F 2d 555 (7 Cir 1965), the court held that "handwritings or notes" were discoverable and "must be produced under" the Jencks Act. Likewise, in United States v. Harrison, 524 F 2d 421 (DC Cir 1975), the court clearly held:

> Rough, handwritten notes taken by Federal Bureau of Investigation agents interviewing eyewitnesses shortly after [the] robbery were "crucial evidence" required to be preserved **and produced.**

Thus, the law is well settled that the "notes" of agent GETZ were subject to discovery.

Furthermore, the record is clear that counsel never sought disclosure of the notes, nor did the government produce the "notes" after GETZ's testimony. Such conduct belies the requirements of the Fifth and Sixth Amendments and Brady v. Maryland, 373 US 83 (1963) and clearly establishes the constitutional violations herein. Further, subsequent to GETZ's testimony, and after having made numerous pre-trial discovery requests, counsel failed to seek disclosure of the "notes" that GETZ used to refresh his recollection. Such failure to seek disclosure and subsequent cross-examination does not fall within the range of competent counsel as guaranteed by the Sixth Amendment and Strickland v. Washington. Thus, the petitioner's rights under the Fifth and Sixth Amendments were violated, and the government's bare denial falls short. This court should find

-60-

counsel was ineffective, that the government violated <u>Brady</u>, and vacate the convictions herein and grant the petitioner a new trial.

———————

GROUND 14.

In GROUND Fourteen, the petitioner asserted that counsel failed to raise a "viable defense" at trial. The government relies on the assertion that counsel could not nothing more than "cross-examine and argue the credibility of witnesses" to the jury. The government also asserts that the petitioner has not identified a single witness or provided any "affidavits" from any potential witnesses who could have testified in his defense.

Contrary to the government's blanket denial and unsupported claim, the petitioner did identify specific witnesses, including family members and friends, who would have established that the petitioner was gainfully employed, worked full-time in Chicago, and was not involved in drug trafficking in the Peoria area. Counsel's failure to investigate these witnesses and present them at trial was ineffective assistance. The §2255 motion, filled with facts and caselaw, clearly supports this position, and the government's bare assertion of unsupported claims fails.

As cited in the §2255 motion, the failure to present a meaningful defense is ineffective assistance. see <u>Montgomery v. Peterson</u>, 846 F 2d 407 (7 Cir 1988) and all of the law cited in the §2255 motion. Further, failure to call witnesses is ineffective assistance. see <u>White v. Godinez</u>, 143 F 3d 1049 (7 Cir 1998). Even failure to investigate is ineffective assistance, when the failure prejudices the defendant. In this matter, the petitioner was clearly prejudiced by counsel's failure to investigate witnesses, call witnesses, and present a defense at trial. Had petitioner known counsel was not going to present a defense, he would have plead

-61-

guilty and received three points off for acceptance of responsibility. Just those three points would have reduced the base offense level to a 35, and with criminal history category II, the petitioner would have faced a sentence of 188-235 months, some 28 to 74 months less than the 262-months he received. Clearly, counsel's ineffectiveness resulted in a conviction and sentence and substantial prejudice under <u>Glover</u> <u>v. United States</u>, 531 US 198 (2001). Had counsel pursued a defense as requested by the petitioner, there is a reasonable likelihood that the petitioner would have been acquitted, as the only evidence connecting him to the charged conspiracy was "hearsay" which would have been rebutted by his defense witnesses, employees, and inability to join a conspiracy in Peoria.

This claim rests solidly on facts outside the record and requires an evidentiary hearing to allow the petitioner to expand the record and prove up his claims. At such a hearing, the petitioner would call the following witnesses who would testify as:

Sam Beelman, Beelman trucking, employer who would testified he employed petitioner full-time from 1999-2001;

Rayner Covering Service foreman Richard (<u>Last Name Unknown</u>-to be discovered) who would testify the petitioner worked for Rayner in 1999-2000;

Jim Carr, Thrall-Carr Steel, Chicago Heights, IL., who would testify the petitioner worked for him from (about) 1993-1997;

Olivia Simpson, mother, who would testify the petitioner was full-time employed and did not associate or work with Burke MEANUS or Haywood Robinson;

Geraldine Boone, aunt, who would testify the petitioner had no knowledge of Burke MEANUS's activities and did not associate or work with MEANUS and was not involved in drug trafficking;

Wardell Pickett, co-worker, who would testify the petitioner was employed with him and the petitioner was not involved in drug-trafficking;

Lilly Haley, aunt, who would testify that the petitioner had no dealings or interactions with MEANUS or ROBINSON and that the petitioner worked full-time and was not involved in drug-trafficking;

Phyllis Haley, aunt, who would testify that the petitioner was employed full-time, spent his time taking care of his family, and did not associate with MEANUS or ROBINSON;

Robert Haley, uncle, who would testify that the petitioner was
employed full-time, spent his time taking care of his family,
that Burke MEANUS had been dealing drugs for over twenty years
and the petitioner never associated with him or dealt drugs;

Cynthia Simpson, ex-wife, who would testify the petitioner is known
as a hard-worker, always employed, and did not sell drugs;
(Note: Ms. Simpson testified at petitioner's sentencing hearing
in this matter and is familiar with the court.);

Shaluanda Simpson, daughter, who would testify the petitioner was
full-time employed, a good father, never dealt drugs, and
did not associate with Burke MEANUS;

Jason Simpson and Stephen Simpson, sons, who would testify their
father was a hard-worker, fully employed, never dealt drugs,
and did not associate with MEANUS or ROBINSON during the
charged conspiracy;

Anthony and Clinton Jordan, brother-in-laws who would testify the
petitioner employed them at his construction company, he was
a hard and honest worker, and that he did not associate with
MEANUS or ROBINSON or any others who dealt drugs.

These witnesses would have clearly cast a shadow of doubt on the govern-
ment's "circumstantial/hearsay" case and would have lead to an acquittal
by the jury if counsel had investigated the witnesses, called them at
trial, and presented a viable defense.

For all of these reasons, this court should convene an evidentiary
hearing, allow the petitioner to expand the record to support his claims,
then to find counsel was ineffective and grant the petitioner a new
trial herein.

---

GROUND 15.

The government asserts that no error under Apprendi v. New Jersey,
530 US 466 (2000) occurred at trial or sentencing because the petitioner
faced a sentence of "ten years to life" after the jury verdict. However,
the government misses the point. At the time Apprendi was decided in
June 2000, some two years prior to petitioner's trial and sentencing,
the term "statutory maximum" for purposes of the Sixth Amendment was
"the maximum sentence the court could imposed based solely on the facts
charged in the indictment, submitted to the jury, and proven beyond

-63-

•

a reasonable doubt." The Supreme Court made that law clear in Blakely v. Washington 542 US \_\_\_ (2004). In its response, the government clearly concedes that it was **"the district court's findings** as to drug quantities [that] **enhanced the guideline minimum sentence to 262-months."** (GR p. 11). This statement of fact and law clearly establishes the Apprendi error as asserted. To the contrary of the government's claims, the district court was not "authorized by verdict to sentence the petitioner to up to life in prison." (GR p. 12). The district court was only authorized to make sentencing findings consistent with the fifty grams of cocaine base **only,** and the resulting level 26 guideline base offense level.

Furthermore, the government's claim that Blakely is not retroactive and the petitioner's "claim is doomed" is patently wrong. While the petitioner did cite to Blakely in his §2255 motion, his argument is brought under Apprendi, and retroactivity is not a concern for this court, as Apprendi was decided some two years prior to petitioner's trial and sentencing. The law is clear that when sentence was imposed in this matter, Apprendi precluded the court from imposing the 262-months under the guidelines. Further, as argued in the §2255 motion, counsel was ineffective when failing to assert a timely and proper Sixth Amendment objection to the Apprendi error set forth herein.

Lastly, the government's claim that collateral attacks on the Guidelines "are not generally permitted" is squarely foreclosed by the Supreme Court's decision in Glover v. United States, 531 US 198 (2001) where the court held that counsel was ineffective when failing to object to or raise on appeal an erroneous sentencing guideline determination which unlawfully increased the sentence imposed. As such, the Sixth Amendment claim brought against counsel and the 262-month sentence is properly and solidly found in law.

-64-

STATE OF ILLINOIS   )
                    )        SS
COUNTY OF B O N D   )

### AFFIDAVIT OF MAILING

I, SAMMIE J. SIMPSON JR., being first duly sworn upon oath deposes and says:

That I have mailed a ture and correct copy of this petition to all party by placing same in the U.S. Mail on the   th day of May 2005, by placing same in the mail bos provied by the United States Bureau of Prisons at the Greenville Correctional Institution, in greenville Illinois.

FURTHER AFFIANT SAYETH NOT

Sammie J. Simpson, Affiant

Subscribed and Sworn to before me this ___O8th___ of ___MAy___, 2005.

WHEREFORE, for all of the foregoing reasons, this court should grant the Motion to Vacate and vacate the sentence and conviction in this matter and order a new trial beheld, or in the alternative, grant the Motion to Vacate sentence and resentence the petitioner according to the Fifth and Sixth Amendments as cited herein.

Respectfully submitted,

Sammie Simpson
20507-424 PO Box 5000-H3B
FCI-Greenville, IL.
62246

## Proof of Service

I hereby certify that I have served a true and exact copy of the attached TRAVERSE/Response on the US Attorney, 211 Fulton Street, Suite 400, Peoria, IL., on this __8__ day of May, 2005, by firstclass postage prepaid in full and deposited in the institution legal mail at FCI-Greenville, IL.

Sammie Simpson

cc:  clerk of court
     file

-65-